IN THE MATTER OF THE APPLICATION FOR A WRIT OF PROHIBITION BY DR. ARNOLD VAN HEUKELOM, PETITIONER, *v.* THE NEVADA STATE BOARD OF CHIROPRACTIC EXAMINERS AND DR. FOSTER H. KRUG, DR. E. P. DEPUTY, DR. M. C. ALDEN AND DR. W. J. HEMINGWAY, AND DR. ROBERT W. WARBURTON, CONSTITUTING THE MEMBERS OF SAID BOARD, RESPONDENTS.

No. 3616

November 30, 1950.                    224 P.2d 313.

*McCarran & Wedge,* of Reno, for Petitioner.

*Harry E. Claiborne,* of Reno, for Respondents.

## OPINION

By the Court, BADT, J.:

This is an original petition for a writ of prohibition prohibiting the respondent board from proceeding with a hearing looking toward the revocation of petitioner's

license to practice chiropractic. The proceedings were initiated by the respondent board against petitioner under the provisions of sec. 1090, N.C.L.1929, which reads as follows:

"Upon complaint of the board, after twenty days notice of time and place of trial has been given to any licensee, if it shall be found that he practices anything other than chiropractic to cure or relieve disease or to remove the cause thereof without having a separate license therefor, or, if it be found that he or she no longer possesses a good moral character or is addicted to the use of narcotic drugs or in any way is guilty of deception or fraud in the practice of chiropractic, his license shall be revoked.

"If the accused is aggrieved by the action of the board, he may appeal to the district court on the merits."

Under this section the board, under date of March 13, 1950, issued and served upon petitioner an "order to show cause" ordering him to appear before said board on April 15, 1950 and show cause why the license issued to him to practice chiropractic in Nevada should not be revoked, upon three stated grounds. The first was that petitioner was "guilty of deception and fraud" because his application for permission to take the examination was not sworn to and because at the time of filing his application he had not yet graduated from a chiropractic school. Both of these elements are required by preceding sections of the act. The second ground was that he was "guilty of deception and fraud" because at the time of the issuance of his purported license on May 12, 1949, the term of office of two members of the three-member board had expired, which fact was known to petitioner. The third ground was that he was "guilty of deception and fraud" because he was practicing under authority of a purported license fraudulently issued to him under the signature of the president, when as a matter of fact the said purported president was deceased on the date under which the said license was issued.

It will be at once noted that the three grounds upon

which the order to show cause is based all have to do with the petitioner's actions in obtaining his license, and do not purport to substantiate or support the statutory ground of petitioner's being "in any way * * * guilty of deception or fraud *in the practice of chiropractic.*" Respondents met this situation in two ways. It is said, first, that if the petitioner obtained his license by fraud, he has no valid license and by purporting to practice as a licensed chiropractic he is guilty of fraud and deceit "in the practice of chiropractic." Secondly, it is said that even without statutory authorization the board has inherent power to revoke a license fraudulently obtained from it.

■ Assuming, without deciding, that respondents are correct in both of these propositions, we must then look again to the allegations of the order to show cause, even to the extent that the same are amplified and explained in the answer to the petition and in respondents' brief, to see whether fraud in the obtaining of the license is charged. The words "fraud and deceit" must be given their common and traditional meaning. They involve intentional misrepresentation or concealment of fact. Tompkins v. Board of Regents, 1949, 299 N.Y. 469, 87 N.E.2d 517. Such fraud and deceit in the filing of petitioner's application to take the examination would necessarily mean such misrepresentation of fact, such purpose and intention to deceive the board of chiropractic examiners as to involve a moral delinquency or a bad or corrupt purpose. Mississippi State Board of Dental Examiners v. Mandell, 198 Miss. 49, 21 So.2d 405.

■ The failure to verify the application as required by statute was of itself patently not a fraud. It involved no misrepresentation or concealment. It was obvious from the face of the application. The board could undoubtedly have rejected the application for its failure of verification or could have returned it so that the verification could be supplied. The applicant signed the form of verification but the notarial certificate that followed was not executed. It is not claimed that any of

the statements contained therein are not true. The required statutory content of the application is largely formal, including name, age, sex, residence, name and location of school *from which the applicant graduated,* date of graduation, and extent of study. Data as to studies and graduation appear from a separate certificate of the school or college, which certificate forms a part of the application. In the instant case it is shown by the certificate of the Palmer School of Chiropractic that the applicant "entered this institution on the 24th day of October, 1947; (2) and *will be* graduated the 25th day of May, 1949." The last italicized words were interlined in the printed form. Thus petitioner's application to take the examination clearly indicated that at the time he had not yet graduated but would be graduated several months thereafter. Correspondence, annexed as exhibits to respondents' answer, show that this situation was called to the attention of the board by the chiropractic school. It is quite true, as asserted by respondents, that the fact that petitioner had not yet been graduated (a condition to his eligibility to take the examination, as is likewise the requirement that he have primary education equivalent to a high school education, under the provisions of sec. 1083, N.C.L.) was necessarily known to petitioner. However, he made no concealment of that fact. On the contrary his application, including the school's certificate as a part thereof, called attention to it. Patently there was no fraud or concealment growing out of this item. (Counsel for petitioner assured the court that petitioner had made no attempt to practice chiropractic in Nevada, despite his license, until after he obtained his certificate of graduation from the chiropractic school.) It should be noted too that at the time of the school's certificate it is recited that the applicant had completed 2,950 hours of sixty minutes each in the listed subjects required as against the minimum 2,400 hours required by the statute itself. It further appears from the school's certificate that the minimum statutory hours for each of the listed subjects

had either been met or exceeded. Under the statute the examination given by the board and the grading of the answers are "solely for the purpose of determining whether the applicant is reasonably qualified to practice chiropractic."

■ It is contended by respondents that petitioner's purported license is a nullity, because at the time of its date one member of the three members was deceased and because at its date the term of two of the members had expired. Of the three-member board, it is alleged by respondents that Dr. Grant's term of office expired April 22, 1949, and that Dr. Heath died April 16, 1949. Dr. Grant, the secretary, apparently dated and mailed to petitioner on May 12, 1949, the license theretofore signed by all members of the board, and certainly signed by Dr. Heath prior to his death. It is not claimed that anyone other than Dr. Heath appended Dr. Heath's signature. But it is alleged by respondents that pursuant to the amendatory act of March 29, 1949, N.C.L.1943–1949 Supp., sec. 1080, et seq., the governor had on April 22, 1949, appointed a new board comprising the named respondents herein. However, the old board under the provisions of sec. 1080, N.C.L., were to serve "until their successors shall have been duly appointed and qualified." It appears affirmatively from respondents' answer that the new board did not organize until May 6, 1949. Until that date it had no president, secretary, treasurer or other officers. It is not claimed by respondents that their appointment and qualification operated ipso facto as a revocation of any acts officially performed by the old board during the term of office of the members thereof and during the lifetime of such members. That the secretary of the old board arbitrarily appended to the license the date of May 12, 1949 when it had patently been signed prior to Dr. Heath's death on April 16, 1949 and which was necessarily also prior to the expiration of Dr. Grant's term of office on April 22, 1949, can hardly be charged as fraud on the part of petitioner.

Respondents assert that they have in their possession

the sealed envelope containing petitioner's examination, and allege on information and belief that the examination was never marked or graded by the old board. Petitioner alleges that he took his examination February 27, 1949, delivered it to the board, and that the board thereupon corrected and graded the examination and gave petitioner a passing grade. In view of the fact that all members of the old board signed the license after the submission of the examination and while Dr. Heath was alive and before Dr. Grant's term had expired (no question is raised as to the third member of the old board, Dr. Hemingway, who is likewise a member of the new board), it would be futile here to discuss this issue of fact thus raised by respondents on their information and belief. The charge is serious in its nature, involving as it does, not only Dr. Heath who is deceased, not only Dr. Grant who is no longer a member of the board, but also Dr. Hemingway, a member of the new board and one of the respondents. No suggestion is made by respondents as to why Dr. Hemingway could not have verified this charge of his own knowledge.

It is further contended that prohibition will not lie for the reason that the respondents in proceeding under the order to show cause will be acting ministerially only and not judicially or quasi judicially. This contention is without merit. Section 1090, under which the order to show cause was issued, refers to the proceeding as a "trial." As a result of this trial the license may be revoked if the board *finds* that the respondent practices anything other than chiropractic to cure disease without a separate license therefor or if the board *finds* that the respondent is no longer of good moral character, or is addicted to the use of drugs, or is guilty of deception or fraud in the practice of chiropractic. It is thus evident that the section contemplates that evidence shall be taken, weighed and considered by the board, which shall then, in the exercise of its judgment and discretion, not only make findings of fact but conclusions of law. Under such circumstances its action is judicial or at least quasi

judicial, and may in a proper case be halted by prohibition.

It is true that in Haviland v. Foley and others comprising the board of governors of the State Bar, 55 Nev. 455, 39 P.2d 198, this court held that the board of governors in hearing de novo a disciplinary proceeding initiated before the local administrative committee do not exercise judicial functions, and that therefore their proceedings may not be arrested by prohibition. The basis for this rule was In re Scott, 53 Nev. 24, 292 P. 291, the first disciplinary case coming before this court under the State Bar Act. There this court emphatically stated that the State Bar Act could not be construed as even partially withdrawing from the supreme court its statutory or inherent power to disbar or suspend an attorney, and that the board of governors was merely an intermediary agency for the taking of evidence and reporting thereon to this court, and that their findings or recommendations are merely recommendatory and not final. This is clearly distinguishable from the act governing the practice of chiropractic. Under that statute the board is given power and authority to revoke the license to practice. Unless an appeal is taken to the district court, the board's action is final. The functions exercised are therefore clearly judicial. Findings and recommendations of the board of governors of the State Bar do not effect a suspension or disbarment. The order of suspension or disbarment may be made only by this court even in the absence of a petition to review the proceedings.

Respondents contend that the provision of sec. 1090, N.C.L. permitting the accused, if aggrieved by the action of the board, to appeal to the district court provides an ample remedy and that prohibition will therefore not lie. Respondents deny the allegation of petitioner that there is no provision for staying the operation of the board's action pending such appeal. The appeal, as noted, is to the district court. Respondent does not attempt to

call our attention to any statute or other authority permitting a stay pending such appeal. The effects upon the petitioner, without such remedy, are obvious. See opinion of NORCROSS, J., in Bell v. District Court, 28 Nev. 280, 294, 81 P. 875, 1 L.R.A.,N.S., 843, 113 Am.St.Rep. 854, 6 Ann.Cas. 982.

The summary at the end of respondents' brief asserts that the order to show cause complies with the statutory provisions "in that it alleges fraud and deception"; that the answer to the petition for the writ sets out *the facts that constitute the said fraud,* namely, (1) that the application was not sworn to, (2) that petitioner took the examination before he had graduated from a chiropractic school, (3) that the examination was not fairly marked and graded, much less even opened and (4) that petitioner's license was *dated* May 12, 1949, some twenty days after the appointment of the new board. The final assertion is that the order to show cause states a cause of action for the revocation of petitioner's license "on statutory grounds," which is apparently again a reference to the statutory ground for revocation when the accused is guilty of deception or fraud *in the practice of chiropractic.*

Using the language of the court in Lowrie v. State Board of Registration and Examination in Dentistry, 90 N.J.L. 54, 99 A. 927, one of the authorities cited by respondents, we may say "of the numerous reasons [given for denial of the writ] we deal only with those which the counsel for the [respondents] deemed worthy of argument in his brief."

At the conclusion of the oral argument of this case we granted respondents additional time to file points and authorities and also an answer to the petition. Such answer has been filed, and petitioner has demurred thereto and moved to strike parts thereof. He has also moved for leave to file an amended petition—the proposed amended petition being attached to such motion. After these matters had been set for presentation and

argument, an order was made pursuant to stipulation to the effect that the amended petition might be filed, that any new matter therein contained be deemed denied, and that the said demurrer and motion to strike, as well as the merits of the petition, be submitted to the court. In view of the conclusions reached by us, it is unnecessary to devote any discussion to the issues raised by the demurrer and motion to strike.

■ · We hold that no statutory ground for revocation of petitioner's license is stated in the order to show cause; that the "deception and fraud in the practice of chiropractic," for which a license may be revoked, clearly applies to the practice of the profession and not to the manner of applying for the license; that, assuming but not holding that the board has an inherent power to revoke a license obtained by fraud, the facts alleged in the complaint or order to show cause, even when aided by the allegations contained in the answer to the petition herein, do not constitute fraud. If the powers of the board are to be enlarged in the matter of considering charges against a member of the profession, that is something for the attention of the legislature.

The alternative writ is hereby made permanent. However, in view of the irregularities on the part of the former board, which apparently commanded the attention and provoked the action of the new board, and in view of the undoubted good faith of the respondent board in seeking to police its own profession and to protect the public, no costs are awarded.

HORSEY, C. J., and EATHER, J., concur.