652

**TEXAS STATE BOARD OF MEDICAL EXAMINERS, Appellant,**

v.

**Orlando S. KOEPSEL, M.D., Appellee.**

No. 13345.

Court of Civil Appeals of Texas.

San Antonio.

July 2, 1958.

Rehearing Denied July 20, 1958.

Will Wilson, Atty. Gen., W. V. Geppert, John Reeves, Assts. Atty. Gen., Sam L. Jones, Jr., Dist. Atty., Corpus Christi, Lee Mahoney, Corpus Christi, for appellant.

Dean B. Kirkham, Lewright, Dyer & Redford, Corpus Christi, for appellees.

BARROW, Justice.

This suit was brought by appellee, Koepsel, by way of an appeal from an order of appellant, Texas State Board of Medical Examiners, cancelling appellee's license to practice as a medical doctor in the State of Texas.

Appellee presented a motion for summary judgment in the trial court, and it was stipulated by the parties that a transcript of the

testimony introduced on the hearing before the Board should be considered by the court for the purpose of the motion for summary judgment. The trial court granted the motion and rendered judgment revoking the order of the Board and declaring the medical license of appellee to be in full force and effect. This appeal is from that judgment.

On motion for summary judgment, under Rule 166–A, Texas Rules of Civil Procedure, all evidence before the court, together with all inferences reasonably deducible therefrom, must be resolved against movant, and such judgment may only be granted where the evidence is such that if presented to a jury an instructed verdict would be proper. Hurley v. Knox, Tex.Civ. App., 244 S.W.2d 557; Statham v. City of Tyler, Tex.Civ.App., 257 S.W.2d 742.

The charges brought by the Medical Board against the doctor are based upon testimony of five different women which we must assume to be true, to the effect that the doctor would cause these women patients to disrobe, or partially disrobe, and lie down on a table facing him, whereupon he would turn out the light and put the patient over to the edge of the table and against him, and while he was massaging the back of the patient he would rub his penis over various portions of the patient's naked body and would move his body back and forth against the body of the patient.

These charges were brought under the provisions of Sec. 4, Art. 4505, Vernon's Ann.Civ.Stats., which reads as follows:

"Grossly unprofessional or dishonorable conduct, [of] a character which in the opinion of the Board is likely to deceive or defraud the public."

The appellee contends here, as he did in the trial court, that while the conduct complained of was both unprofessional and dishonorable, it was not of that character which was likely to deceive and defraud the public.

It is not contended by the Board of Medical Examiners that the treatment which the doctor was giving these ladies was other than proper. It was fully agreed that the treatments, that is, the back rubbing, were efficient and had therapeutic value, and it is not contended that the conduct complained of was any part of these treatments.

Undoubtedly, the doctor's improper conduct practiced upon the person of the particular patient constituted a fraud and deception perpetrated upon such patient, and it also comes within the meaning of gross unprofessional and dishonorable conduct. But, after a careful study of all authorities on the subject which we have been able to find, both in the State and other jurisdictions, we have concluded that such conduct does not come within the classification of fraud and deceit, nor the unprofessional and dishonorable conduct contemplated in Section 4 of Article 4505.

As said by Judge Fly of this Court in Berry v. State, 135 S.W. 631, 634:

"The terms 'unprofessional' or 'dishonorable' conduct used in the law of 1907 (now Article 4505) are qualified and modified by the language 'of a character likely to deceive or defraud the public,' to distinguish them from acts that are unprofessional or dishonorable under the code of ethics prescribed by the honorable profession of medicine that would not, directly at least, react to the disadvantage of the public, * * *."

In the same opinion, in speaking of the kind of conduct denounced by this section, Judge Fly said: "It is similar and close akin to swindling, but all the essentials of swindling need not be proved, in order to justify a verdict of dishonorable or unprofessional conduct."

We think it is apparent that the kind of fraud and deception covered by this section has reference to quacks and charlatans who prey upon the credulous and unwary by representing themselves as possessing miraculous cures which do not in fact exist, knowing that such claims are false. We think it

is clear that this section does not and was not intended to cover immoral conduct of the practitioner, and that the exclusive remedy in such cases is provided by Section 2 of Art. 4505, requiring a conviction for offenses involving moral turpitude. Berry v. State, supra; Morse v. State Board of Medical Examiners, 57 Tex.Civ.App. 93, 122 S.W. 446; Waller v. State, Tex.Civ.App., 68 S.W.2d 601; Janeway v. State Board of Chiropractic Examiners, 33 Tenn.App. 280, 231 S.W.2d 584; Forman v. State Board of Health, 157 Ky. 123, 162 S.W. 796; Van Heukelom v. Nevada State Board of Chiropractic Examiners, 67 Nev. 649, 224 P.2d 313.

The Board relies strongly on the case of Jacobi v. Texas State Board of Medical Examiners, Tex.Civ.App., 308 S.W.2d 261. Incidentally, this is the only case we have been able to find which involved a charge of immoral conduct. That case is readily distinguishable from the case we have here. In the Jacobi case the doctor was charged that he, while pretending to examine and/or treat each of seven patients, did manipulate his hands and fingers in and around her genital organs, all of which manipulation was of no value, either medically or otherwise to the patient, and all of which manipulation was unprofessional and dishonorable conduct of a character likely to deceive and/or defraud the public, and did in fact deceive and defraud the patient. The doctor's claim was that he gave treatments which he designated as "pelvic massage." There were three special issues submitted relating to each patient. The jury found, (1) that he did so manipulate his hands and fingers in such manner that such treatment was of no value to the patient, (2) that he did so for the purpose of deceiving and defrauding the patient by thus inducing her to believe that such manipulation was beneficial to her, either medically or to her health, (3) that such conduct was of a character likely to deceive and defraud the public by inducing the belief that the professional services being performed by him were beneficial, either medically or to the health, when in

truth and in fact they were not, and were known by him not to be beneficial. Thus in the Jacobi case it is apparent that a fraudulent quack practice case was presented, whereas in the case here under consideration it was stipulated that the doctor was actually giving treatments to the patients which had therapeutic value and were efficacious and beneficial to the patients. The improper and immoral conduct was aside from and not pretended to be the treatment or a part thereof.

◼ Therefore, the conduct complained of is not sufficient, under Section 4 of Article 4505, to authorize the cancellation or revocation of appellee's license to practice medicine, and the trial court properly granted the summary judgment.

The judgment is affirmed.

POPE, Justice.

I respectfully dissent. The charges against Dr. Koepsel were brought under Art. 4505(4), Vernon's Ann.Civ.Stats., which provides that the State Board of Medical Examiners may refuse to license persons for:

"Grossly unprofessional or dishonorable conduct, [of] a character which in the opinion of the Board is likely to deceive or defraud the public."

This clause is the only one, out of some thirteen statutory wrongs, which uses the words "grossly unprofessional or dishonorable conduct." The professional dereliction must be gross in degree. This wording wisely protects the physician. Let us see if the conduct was grossly unprofessional or dishonorable. Five women stated that at different times they went to the doctor's office; that they were taken into a room and instructed to disrobe; that they were placed on a table and were then subjected to grossly unprofessional or dishonorable conduct by the doctor.

The majority recognizes this first element of the charge but determines that the part of the statute which requires that the

conduct must be "likely to deceive or defraud the public," does not mean the kind of deceit and fraud here involved. It is at this point that I depart from the reasoning of the majority, for several reasons.

First: Deceit was proved. The five women stated that they were shocked, surprised and deceived by the doctor's conduct. Some of them were emotionally shaken by the experience. Some left the doctor's office without his knowing of their departure, while he was answering the phone. All of them learned of the unprofessional conduct while the doctor was actually giving proper back massage.

Second: The statute only requires that the conduct be "likely" to deceive or defraud the public. "Likely" means "probably". The probability was demonstrated in this record. We have proof that the doctor on five different occasions followed the same pattern of conduct toward women who placed their trust and virtue in his professional control. After violating that trust under the circumstances here revealed, the showing is such as demonstrates that the doctor is "likely" to deceive still other persons. Insofar as the past is concerned, as already stated, the doctor did not "likely" deceive; he actually deceived these women. So, whether based on past deceit or future probable conduct toward the public, the proof supports the charge.

Third: We come now to the point whether this is the kind of deceit the Legislature intended. In my opinion, if the Legislature wanted to limit the kinds of deceit, they would have catalogued them for us. When they said deceit they meant deceit. They were not speaking of criminal deceit, for if they had been it would have been superfluous, as Art. 4505(2) amply covers deceit and fraud of a criminal nature. The doctor strenuously argues that the statute refers to quackery or false treatment. Again, if the Legislature had intended to so limit the meaning of deceit, they could well have said so. Instead of limiting the grounds, they made them as broad as possible, and particularly when they opened the section in broad terms by the use of the words, "grossly unprofessional or dishonorable conduct." The context contemplates wide scope. Moreover, quackery is covered rather fully in Section 6 of the statute in prohibiting "The use of any advertising statement of a character tending to mislead or deceive the public." Hence, Section 4, under which these charges are brought, relates to conduct which deceives, and Section 6, as that section also clearly states, relates to statements which deceive. In my opinion, Section 4 was intended to embrace the precise situation here illustrated.

Appellee wholly relies upon the concession made by the State Board, that by massaging the patients' backs he was giving proper and beneficial treatment. Suffice it to say that he is not charged with massaging their backs, but with unprofessional and dishonorable conduct which is likely to deceive the public. The patients went to the doctor's office where they were given proper treatment. The proper treatment was the blind and cover for conduct which the doctor sought to conceal from the patient in the darkened room. The proper treatment was the decoy; the darkened room the trap; the trusting patient the victim; the sexual aberration, the grossly unprofessional and dishonorable conduct. These women were deceived. Can anyone argue that they expected such treatment in the physician's office?

Somehow, the fact that the doctor spent part of his time giving proper treatment is supposed to wipe the slate clean. Be it noted that Section 4 of the statute speaks of unprofessional conduct, but does not mention improper treatment. That feature comes into the case by judicial interpretation. Here we have conduct which is expressly covered by an Act of the Legislature. There are times when the clearest answers are found in the statute as written.

The majority reasons that the Jacobi case held that fraud in rendering improper treatment, once and for all carved out the only kind of professional deceit intended. In the Jacobi case the deceit consisted of the fact that the doctor deceived the patient into believing the treatment she received was proper medical treatment. In this case, the deceit consisted in the fact that the doctor deceived the patient into believing that the proper medical treatment would not be accompanied with secret sexual acts. There may be many kinds of professional deceit. Jacobi presented one kind; this case presents another. Jacobi did not decide all the law. The statute is broader than Jacobi.

This case does not concern merely a doctor's immoral conduct, but immorality practiced under cover of professional treatment. That is the situation which makes this a matter of public and professional concern.

Fourth: Article 4506 provides that there may be a cancellation of a license for any cause for which the Board shall be authorized to refuse to admit persons to its examinations. Let us assume that a doctor has applied for his license and these five women gave testimony to the Board, which the Board believed, as in the present case and refused a license to the applicant. Under the opinion of the majority, the applicant could mandamus the Board and obtain his license. I do not believe the Legislature intended so honorable a profession would be forced to embrace such dishonorable conduct.

"* * * when the unprofessional conduct of the member of the medical profession is of such a character as to deceive or defraud the public, the law denounces such conduct, and strips the offender of the means which make it possible to impose upon the credulous and unwary." Berry v. State, Tex.Civ. App., 135 S.W. 631, 634.

I would reverse and remand the case for trial upon the merits.