LOUIS K. BOSWELL, JR., Petitioner, *v.* BOARD OF
MEDICAL EXAMINERS OF THE STATE OF
NEVADA, GEORGE ROSS, THEODORE ROSS,
LESLIE MORAN, STANLEY HARDY AND KEN-
NETH MACLEAN, Respondents.

No. 3913

February 1, 1956.                293 P.2d 424.

*Royal A. Stewart* and *Richard W. Horton,* of Reno,
for Petitioner.

*Summerfield & Heward,* of Reno, for Respondents.

## OPINION

By the Court, BADT, J.:

The question presented by this petition is: May the
board of medical examiners proceed to try a duly
licensed doctor of medicine on charges of unprofessional
conduct because of harshly critical language (as more

particularly set forth in the specific charges hereinafter quoted) directed by him at the three other doctors practicing in the county and at the entire local medical profession? Further: Did the statements, in the words and under the circumstances as charged, bear such a threat to the public health, safety, morals or welfare as to justify the license revocation proceeding? We answer both questions in the negative, and conclude that the writ of prohibition sought must be issued.

The state board of medical examiners cited Dr. Louis K. Boswell, authorized July 15, 1954 to practice medicine in Nevada, to appear before it and answer charges of unprofessional conduct—"conduct unbecoming a person licensed to practice medicine or detrimental to the best interest of the public,"[1] because of specific statements made by him.

Dr. Boswell is engaged in practice in Yerington, Lyon County. Besides him three other doctors, licensed to practice medicine, are engaged in practice in that community and county. The charges of the medical board specify conversations had with six persons, in which Dr. Boswell made statements reflecting upon the standard of medical practice in the county and upon nursing practices and insultingly reflecting upon the abilities of the other three doctors.

The first doctor he referred to as the "city drunk."

---

[1] N.C.L., sec. 4107.15, 1943–1949 Supp.: "The board shall refuse a certificate to any applicant guilty of unprofessional conduct, and for like cause it may revoke any certificate, either permanently or temporarily, and suspend the party so found guilty from the practice of medicine either permanently or for a time determined by the board. The words 'unprofessional conduct,' as used in this act, are declared to mean: * * * Conduct unbecoming a person licensed to practice medicine or detrimental to the best interest of the public.'" The same section declares "unprofessional conduct" to include such things as obtaining a certificate upon fraudulent credentials, procuring a criminal abortion, obtaining a fee on assurance that a manifestly incurable disease can be permanently cured, conviction of felony, administering of drugs otherwise than in the course of legitimate professional practice, habitual intemperance, excessive use of drugs, employing an unlicensed practitioner, gross negligence in the practice, adjudication of insanity, etc.

The second he designated "nothing but a lousy old midwife" who had "probably killed more patients in this valley than she ever helped"; who never performed operations but treated her patients who were suffering from appendicitis with a high, hot enema; who had left a large percentage of the women of the county with their "insides hanging out" due to the butchery to which they were exposed under her care; who left all women she delivered with rectoceles and cystoceles; and who had bled the people of the community for all money possible for care that was inadequate.

Dr. Boswell was for awhile associated in practice with the third doctor. He terminated the association and later stated that that doctor had been incapable of handling the medical work Dr. Boswell had expected of him and could not maintain Dr. Boswell's high standards of practice.

Reflecting generally upon medical standards were statements by Dr. Boswell to the effect that the standard of medical practice throughout the west was so low as to be a national disgrace but that doctors from the east were gradually bringing the standards up to average; that the people of Lyon County had never known what good ethical medical practice was until he came; that he was appalled at the great amount of surgery to be done upon the women of the county; that all he had examined who had had children during the past 40 years had received improper medical care and were in need of surgery; that he was "tickled pink" at the situation, as he would have these women as his patients.

As to nurses he stated that those at the local hospital were "a lousy bunch." Specifically he had falsely accused one nurse of "jimmying" an X-ray machine at the hospital so that he could not use it and on one occasion of leaving the operating table at a critical point in an operation which had unduly lengthened the operating time.

The six persons to whom he had made these statements were: the doctor with whom he had been associated, that doctor's wife, a registered nurse, a licensed

pharmacist and two women unidentified save by name who may or may not have been his patients.

The board made other charges which it concedes are so general in their present form as to relieve Dr. Boswell of obligation to answer and, therefore, are not here considered.

Whatever words one might be disposed to use in characterizing the language employed by Dr. Boswell— harsh, vicious, caustic, bitter, unrestrainedly critical, egotistical, uncharitable, unpleasant, vulgar, slanderous, etc.—and whatever may be the remedies on the part of the persons against whom the remarks were directed, the question for our determination remains unanswered. Did these statements (which we must assume, under the petition, to have been made as charged) made under the circumstances above recited, constitute unprofessional conduct within the purview of sec. 4107.15 N.C.L., 1943–1949 Supp.? Did they constitute "conduct unbecoming a person licensed to practice medicine or detrimental to the best interest of the public"? The board's theory in answering the above question in the affirmative is best illustrated by its quotation from 41 Am.Jur. 181, as follows: "The misconduct, bad character, or immorality for which the license of a physician * * * may be revoked need not necessarily be connected with his profession, practice or patients; it is enough if it relates only to his personal life." We need not debate this— under properly applicable facts, but turn directly to the one case upon which respondents rely, State Board of Medical Examiners v. Spears, 79 Colo. 588, 247 P. 563, 566, 54 A.L.R. 1498, in which a chiropractor, for the purpose of increasing his own business and income, printed and published false charges that a hospital caused the death of a patient by inhuman treatment. Petitioner distinguishes this case for the reason that the court's emphasis was upon the *printing and publication* of the false charges and that such charges were made for the purpose of increasing the petitioner's own business and income, while in the case at bar the statements were

made in private conversation, in large part with persons with whom Dr. Boswell was professionally associated and to whom he might be expected to express a critical professional opinion. We find a further distinction in the fact that the Spears case, reaching the Colorado supreme court on certiorari, was never decided on the merits by that court. That court limited itself to the finding that the medical board had jurisdiction and did not abuse its discretion or fail regularly to pursue its authority—the only questions which, under its rules and practice, the supreme court of Colorado could consider. The court said: "We must accept the finding of the medical board, and the trial court should have accepted it as a verity, that defendant's conduct bore such an intimate relation to the public health and public morals as to justify the finding that the respondent's conduct was unprofessional and dishonorable * * * neither the district court nor this court may enter upon the investigation of the merits, or inquire if the board made a mistake in its findings of fact, or erred in its conclusions upon the facts." Such, however, is not the rule in Nevada. Van Heukelom v. Nevada State Bd. of Chiropractic Examiners, 67 Nev. 649, 224 P.2d 313; Richardson, State ex rel. v. Board of Regents of University of Nevada, 70 Nev. 347, 269 P.2d 265.

Other cases are cited by respondents. The bad character, the unprofessional and unbecoming conduct, the gross immorality of the licensees in the cases cited and in the cases mentioned in footnote 1 at once suggest necessary measures for protection of the public, but afford no precedent supporting the charges here made as grounds for the revocation of a license to practice medicine.

Acts of the legislature like the one in question, conferring jurisdiction on medical boards to revoke a physician's license, find their justification in the police power of the state to protect the public health, safety or morals. Hewitt v. State Medical Examiners, 148 Cal.

590, 84 P. 39, 3 L.R.A., N.S., 896. Only two suggestions are made by the board to bring this case within such justification. First, it is suggested that the patients of the criticized physicians may be caused to lose confidence in them and their recovery be retarded by reason of such loss of confidence. Secondly, it is urged that a doctor who is so harsh and unrestrained in his language is thereby demonstrated to be a person of such character that he should not be licensed to practice medicine, and that the practice of medicine by a person of such character is detrimental to the best interest of the public. Neither argument is sound and the board has cited no case in which such principle has been enunciated. It has never been held that the public health, safety or morals requires protection through the suppression of criticism of individual doctors or criticism of the medical profession as a whole, no matter how harsh the terms in which such criticism is expressed. The common sense and sound judgment of the public in its reaction to unwarranted or unjust criticism of individual doctors or of the medical profession affords a far better protection than the one sought here by the board of medical examiners. Public reaction may indeed be a resentment, not against the criticized doctors and not against the criticized profession, but against the person making the charges if such charges are considered to be unjust or unfair or without justification. Neither the right of individual practitioners to protect themselves nor the right of the medical profession to protect itself may be promoted under the provisions of a statute whose sole purpose is the protection of the public, and whose sole justification lies in the police power of the state exercised to that end.

It is ordered that the petition be and the same hereby is granted, and that the writ issue as prayed for.

MERRILL, C. J., and EATHER, J., concur.