GEORGE L. MOORE, APPELLANT, v. THE BOARD OF TRUSTEES OF CARSON–TAHOE HOSPITAL, A PUBLIC HOSPITAL, AND WILLIAM SCHULTZ, WILLIAM YOUNG, GENE GOLD, JOSEPH LITTLEFIELD, AND MARY GIALY, CONSTITUTING THE MEMBERS OF SAID BOARD, RESPONDENTS.

No. 6684

April 6, 1972      495 P.2d 605

[Rehearing denied May 3, 1972]

*Carl F. Martillaro,* of Carson City, for Appellant.

*Michael E. Fondi,* District Attorney, and *Laxalt, Berry & Allison,* of Carson City, for Respondents.

## OPINION

By the Court, Mowbray, J.:

The appellant, George L. Moore, is a doctor of medicine and is licensed to practice in the State of Nevada. He also

enjoyed medical staff privileges at the Carson-Tahoe Hospital until they were terminated on February 19, 1970, by action of the Hospital Board of Trustees. Doctor Moore filed a petition in the district court seeking a writ of mandate in an effort to force the Board to restore his medical staff privileges. The district judge denied his request and hence this appeal.

The issues presented for our consideration may be summarized under two headings: (1) Is the action of a governing board of a public hospital arbitrary, capricious, and unreasonable when it terminates the medical staff privileges of a physician on the grounds of unprofessional conduct, where the acts constituting the conduct complained of are not·expressly defined and prohibited in the bylaws, rules, and regulations promulgated by the hospital? (2) Is there sufficient evidence in this case to support the findings of the Board?

1. Doctor Moore was charged with 12 alleged acts of unprofessional conduct, and he was found guilty of Charges Nos. 7 and 11 of the complaint. Those charges read as follows:

"7. On or about July 26, 1969, you attempted to administer to an O.B. patient, ready to deliver a baby, a spinal anesthetic without benefit of sterile technique in that you prepared the medication, performed a minimal skin preparation and placed your fingers on the spinal needle, all without wearing sterile gloves. Additionally, you attempted the spinal puncture several times, all attempts being unsuccessful."

"11. On or about July 28, 1969, you had a meeting with the Chief of Staff, Doctor Thomas Hines, and Doctor William King, at approximately 7:30 a.m. in the morning, after which Doctor Hines, with the concurrence of Doctor King, cancelled certain surgery you had scheduled on the basis that you were in no condition physically or mentally to perform surgery."

2. The Carson-Tahoe Hospital is a public hospital and is governed by the provisions of NRS 450.010 through 450.700. NRS 450.160 provides as follows:

"The board of hospital trustees shall make and adopt such bylaws, rules and regulations for its own guidance and for the government of the hospital, and such rules and regulations governing the admission of physicians to the staff, as may be deemed expedient for the economic and equitable conduct thereof, not inconsistent with NRS 450.010 to 450.510, inclusive, or the ordinances of the city or town wherein such hospital is located."

NRS 450.180, subsection 4, further provides:

"The board of hospital trustees shall have the power:

". . .

"4. To control the admission of physicians, surgeons and internes to the staff by promulgating appropriate rules, regulations and standards governing such appointments."

The Hospital Board of Trustees, as the governing body of the institution, promulgated bylaws, rules, and regulations designed to govern the medical staff of the Hospital.

NRS 450.440, subsection 1, provides:

"1. The board of hospital trustees shall organize a staff of physicians composed of every regular practicing physician in the county in which the hospital is located who meets the standards fixed by the rules and regulations laid down by the board of hospital trustees."

The delegated power to establish admission standards for medical staff members impliedly includes the power to continue to regulate membership after admission. It is axiomatic under the rule of statutory construction that a power conferred by statute necessarily carries with it the power to make it effective and complete. See Checker, Inc. v. Public Serv. Comm'n, 84 Nev. 623, 629–630, 446 P.2d 981, 985 (1968), citing Koelling v. Board of Trustees, 146 N.W.2d 284 (Iowa 1966).

Article 4, Section 5, of the Hospital's "By-Laws, Rules & Regulations Governing the Medical Staff" provides in part that any Medical Staff member "who is guilty of unprofessional conduct, may have his privileges reviewed[,] altered or rescinded by the Board of Trustees on recommendation of the Medical Staff." Doctor Moore was formally charged by a complaint that set forth with specificity in 12 counts the acts with which he was charged. He was present with counsel at all stages of the proceedings and was afforded the right of cross-examination of witnesses and the right to call witnesses in his own behalf. There is no procedural due process challenge presented in this case. Rather, Doctor Moore complains that he was denied substantive due process because the acts of which he was found guilty (numbered paragraphs 7 and 11 of the complaint) were not specifically proscribed in the Hospital's "By-Laws, Rules & Regulations Governing the Medical Staff," and therefore they cannot constitute a predicate for the Board's conclusion that he was guilty of unprofessional conduct. We do not agree.

In North Broward Hosp. Dist. v. Mizell, 148 So.2d 1 (Fla. 1962), the court held that the governing body of the hospital should be permitted certain discretion under the broad standard "[for] the good of the hospital or the patients therein," and

that such words were essentially the same in meaning, when used in such context, as those used in other instances to authorize suspension for "unprofessional conduct." The court ruled that the particular bylaw provision set an objective standard upon which a board could act and by which a physician would have sufficient notice to guide him in his conduct. The court said, 148 So.2d at 5:

". . . There is at least equal difficulty in precise definition of professional fitness for staff membership in any given institution . . . Detailed description of prohibited conduct is concededly impossible, perhaps even undesirable in view of rapidly shifting standards of medical excellence and the fact that a human life may be and quite often is involved in the ultimate decision of the board."

The Oregon Supreme Court, in a case involving a revocation of a physician's license to practice medicine, said in In re Mintz, 378 P.2d 945, 948 (Ore. 1963):

". . . [T]he variety of forms which unprofessional conduct may take makes it infeasible to attempt to specify in a statute or regulation all of the acts which come within the meaning of the term. The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case. . . ."

If the standard "unprofessional conduct" is sufficiently objective in the case of a revocation of a physician's license to practice, it should be a sufficiently objective standard to guide a hospital board in acting upon the revocation of a physician's medical staff privileges in a community hospital.

Today, in response to demands of the public, the hospital is becoming a community health center. The purpose of the community hospital is to provide patient care of the highest possible quality. To implement this duty of providing competent medical care to the patients, it is the responsibility of the institution to create a workable system whereby the medical staff of the hospital continually reviews and evaluates the quality of care being rendered within the institution. The staff must be organized with a proper structure to carry out the role delegated to it by the governing body. All powers of the medical staff flow from the board of trustees, and the staff must be held accountable for its control of quality. The concept of corporate responsibility for the quality of medical care was forcibly advanced in Darling v. Charleston Community Memorial

Hosp., 211 N.E.2d 253 (Ill. 1965), wherein the Illinois Supreme Court held that hospitals and their governing bodies may be held liable for injuries resulting from imprudent or careless supervision of members of their medical staffs. The role of the hospital vis-a-vis the community is changing rapidly. The hospital's role is no longer limited to the furnishing of physical facilities and equipment where a physician treats his private patients and practices his profession in his own individualized manner.

The right to enjoy medical staff privileges in a community hospital is not an absolute right, but rather is subject to the reasonable rules and regulations of the hospital. Licensing, *per se,* furnishes no continuing control with respect to a physician's professional competence and therefore does not assure the public of quality patient care. The protection of the public must come from some other authority, and that in this case is the Hospital Board of Trustees. The Board, of course, may not act arbitrarily or unreasonably in such cases. The Board's actions must also be predicated upon a reasonable standard.

In Selden v. City of Sterling, 45 N.E.2d 329 (Ill.App. 1942), the court ruled that the recommendation of the medical staff executive committee, based on the observations of its members of another physician's work, established a sufficient standard upon which to act in the granting of medical staff privileges. In the present case, Dorothy Haman, a nurse anesthetist, testified regarding Doctor Moore's unsuccessful attempts to administer the spinal anesthetic. She also testified regarding the procedure normally utilized. Dr. Thomas Hines testified that the procedure used by Doctor Moore substantially deviated from the accepted practice. Doctor King likewise testified. These three witnesses established the objective standard for administering spinal anesthetics. Doctor Moore failed to establish any other standard. Rather, he admitted deviating from the standard procedure but felt that he was justified in doing so. Doctors Hines and King testified that Doctor Moore was in no physical or mental condition to perform surgery that he had scheduled on the morning of July 28, 1969. Doctor Hines, in conference with Doctor Moore, so advised him, and it was agreed that the scheduled surgery be canceled. No physician should perform surgery when he is not physically or mentally fit to do so.

After reviewing the record, it is clear that the Board did not act arbitrarily in this case, or without a standard to guide it, and that the record does contain sufficient evidence to support

the charge of violation of the standard of professional care required in such cases. Therefore, the judgment of the district court is affirmed.[1]

Zenoff, C. J., and Batjer, J., concur.

Thompson, J., with whom Gunderson, J., agrees, dissenting:

Dr. Moore, a Board certified physician and surgeon who specializes in obstetrics and gynecology, and is licensed to practice in Nevada, appeals from a judgment denying his petition for a writ of mandate to compel his admission to membership on the medical staff of Carson-Tahoe Hospital, a public hospital.[2] He was excluded from staff privileges for "unprofessional conduct" in that on one occasion he administered a spinal anesthetic without wearing sterile gloves, and on another occasion he had appeared at the hospital to perform scheduled surgery when in no condition physically or mentally to do so. The spinal anesthetic was administered without damage to the patient. Dr. Moore acquiesced in the postponement of the scheduled surgery and successfully performed the operation at a later time.

1. It is apparent that important rights and policies are involved. The effect of expulsion from a medical staff can be disastrous for it may follow the doctor to other areas and have the result of denying to a licensed physician qualified to practice in Nevada the right to fully exercise his profession. Conditions of modern medicine almost make it imperative that a doctor have a hospital in which he can practice. On the other hand, a hospital cannot function without its medical staff whose most important responsibility is to see that the staff members conform to certain standards which the community has the right to expect.

The Board of Hospital Trustees enjoys the power to control

---

[1]Of course, this ruling is not to be interpreted as barring forever Doctor Moore from seeking staff privileges at the Hospital. He may, if he wishes, at a later date submit his application for readmission to the Board for its consideration.

[2]A doctor has a right to treat his patients in a public hospital so long as he conforms to the reasonable rules and regulations of the hospital. Findlay v. Board of Sup'rs of County of Mohave, 230 P.2d 526 (Ariz. 1951); Ware v. Benedikt, 280 S.W.2d 234 (Ark. 1955); Hamilton County Hospital v. Andrews, 84 N.E.2d 469 (Ind. 1949). And, of course, a writ of mandate may issue "to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded. . . ." NRS 34.160; State v. City of Parkersburg, 136 S.E.2d 783 (W.Va. 1964).

the admission of physicians to the staff by promulgating appropriate rules, regulations and standards [NRS 450.180(4); 450.440(1)] and concomitantly, possesses the power to exclude physicians who do not comply with appropriate rules thus promulgated. The "By-Laws, Rules & Regulations Governing the Medical Staff" promulgated by the Carson-Tahoe Board of Trustees, in relevant part, provide only that any Medical Staff member "who is guilty of unprofessional conduct may have his privileges reviewed, altered or rescinded by the Board of Trustees on recommendation of the Medical Staff." One searches in vain for a description of "unprofessional conduct" even in general terms. Herein lies the difficulty with the instant matter. A hospital should not be permitted to adopt standards for the exclusion of doctors which are so vague and ambiguous as to provide a substantial danger of arbitrary discrimination in their application. Rosner v. Eden Township Hospital District, 375 P.2d 431 (Cal. 1962); Jacobs v. Martin, 90 A.2d 151 (N.J.Sup. 1952).

Our legislature has defined "unprofessional conduct" for the guidance of the Board of Medical Examiners in exercising its disciplinary powers. NRS 630.030; 630.300. A definition was deemed essential in order to guard against discriminatory action by the Board of Medical Examiners. A suitable definition is equally essential to protect a hospital staff member from arbitrary conduct by a Board of Hospital Trustees of a public hospital. Absent that definition, the Board is clothed with almost unlimited power, susceptible of abuse.

2.   The acts for which Dr. Moore was expelled from the staff point to the need for a definition of "unprofessional conduct." His acquiescence in the request not to perform scheduled surgery was an act of compliance rather than an act of disobedience. And, the administration of an anesthetic without sterile gloves can be no more than an isolated instance of negligence which did not result in injury or damage. Such an isolated act without injury cannot be a reasonable basis for revocation of staff privileges, for if it is, and if enforced equally and without discrimination, medical staffs will disappear entirely. Every professional man errs from time to time.

3.   The Board is concerned with its liability to third persons for the misconduct of its staff members. Darling v. Charleston Community Memorial Hospital, 211 N.E.2d 253 (Ill. 1965). This is a legitimate concern, but it possesses no relevance to the case at hand. Neither of the instances relied upon by the Board to justify the expulsion of Dr. Moore could possibly

result in Board liability to others. Consequently, this concern of the Board points to the arbitrariness of its action rather than to a reason for sustaining it. Cf. Boswell v. Bd. Med. Ex., 72 Nev. 20, 293 P.2d 424 (1956).

The judgment should be reversed with directions to issue a writ of mandate compelling the Board to admit Dr. Moore to membership on the medical staff.