ALVIN R. MEINHOLD, Appellant, v. THE CLARK COUNTY SCHOOL DISTRICT, BOARD OF SCHOOL TRUSTEES OF THE CLARK COUNTY SCHOOL DISTRICT, MR. GLEN C. TAYLOR, MRS. HELEN C. CANNON, MR. JOHN F. ANDERSON, DR. CLARE W. WOODBURY, MR. C. DONALD BROWN, MR. JAMES C. ANDRUS, MR. DAVID CANTER, DR. KENNY C. GUINN, Respondents.

No. 6811

February 14, 1973                    506 P.2d 420

[Rehearing denied March 29, 1973]

*Robert N. Peccole*, of Las Vegas, for Appellant.

*Robert L. Petroni,* of Las Vegas, for Respondents.

58

## OPINION

By the Court, BATJER, J.:

This appeal is taken from an order of the district court dismissing appellant's petition for a writ of certiorari. That order of the district court had the effect of affirming the action of the Clark County Board of School Trustees (hereinafter referred to as the "board") in refusing to renew an employment contract for the appellant, a teacher in the Clark County School District.

For several alleged reasons, including unprofessional conduct, insubordination, inadequate performance and failing to comply with such reasonable requests as the board may prescribe, the appellant was notified in March of 1971 that his contract with the Clark County School District would not be renewed for the 1971–72 school year. The notice of dismissal was given pursuant to the requirements of NRS 391.312 to 391.3196, inclusive.

The appellant requested a hearing before a panel of the professional review committee (NRS 391.316–391.3195). That panel upheld the recommendation that the appellant's contract not be renewed. The appellant then sought relief from the board and the board also approved the recommendation.

The district court in reviewing the determination of the board was limited to a review of the record of the evidence presented to the board to determine if it had exceeded its jurisdiction and whether there was cause to refuse to rehire the appellant. NRS 34.090; Luc v. Oceanic Steamship Co., 84

Nev. 576, 445 P.2d 870 (1968); State v. Bd. of Regents, 70 Nev. 144, 261 P.2d 515 (1953); Richardson v. Bd. of Regents, 70 Nev. 347, 769 P.2d 265 (1954).

Unlike Richardson v. Bd. of Regents, supra, which was an original proceeding in certiorari to review the action of the board of regents of the University of Nevada, this is an appeal from an order of the district court denying certiorari. When the determination of an inferior tribunal, in this case the board of trustees, is challenged by certiorari, the function of this court is identical to that of the district court. Cf. Barnum v. Williams, 84 Nev. 37, 436 P.2d 219 (1968); Bd. Chiropractic Exam'rs. v. Babtkis, 83 Nev. 385, 432 P.2d 498 (1967); Miller v. Munger, 88 Nev. 405, 498 P.2d 1336 (1972); Miller v. West, 88 Nev. 105, 493 P.2d 1332 (1972).

The appellant does not contend that there was any defect in the notice of non-renewal of his contract, given pursuant to NRS 391.312–391.319,[1] but alleges that he was not notified in accordance with Clark County School District regulation 4413(f).[2] On this basis he challenges the entire proceedings and specifically the jurisdiction of the board to conduct a hearing and approve the recommendation of non-renewal.

1. Although a challenge to jurisdiction may be raised at any time, (Stock Growers and Rancher's Bank v. Milisich, 48 Nev. 373, 233 Pac. 41 (1925); Pershing Quicksilver Co. v. Thiers, 62 Nev. 382, 152 P.2d 432 (1944); Provenzano v. Long, 64 Nev. 412, 183 P.2d 639 (1947)), it cannot be based upon a mere conclusion but must be supported by competent evidence. Both the district court and this court must confine review to the facts contained in the record. Clark County School District regulation 4413(f) was never introduced into evidence at any point in the proceedings and is not in the record, although it is set out in appellant's brief and is referred to in respondent's brief. In Lindauer v. Allen, 85 Nev. 430,

---

[1]No contention has been raised by the appellant that the provisions of NRS 391.311 to 391.3197 are not applicable to him because he had entered into a contract with the board as a result of the Local Government-Employee-Management Relations Act providing separate provisions relating to the board's right to dismiss or refuse to employ him. See NRS 391.3197(2).

[2]Clark County School District regulation (4413(f)) apparently required that a notice of non-renewal must be given by the first Friday in March. The appellant had been notified of non-renewal of his contract pursuant to NRS 391.317(1) and NRS 391.3196(1) on March 9, 1971, which was the second Friday in March, 1971.

456 P.2d 851 (1969), we said: ". . . [F]acts in the briefs of counsel will not supply a deficiency in the record." Mitchell v. Bromberger, 2 Nev. 345 (1866); Wilson v. Wilson, 55 Nev. 57, 24 P.2d 317 (1933); A Minor v. State, 85 Nev. 323, 454 P.2d 895 (1969); Lee v. Sheriff of Clark County, 85 Nev. 379, 455 P.2d 623 (1969); Jernigan v. Sheriff of Clark County, 86 Nev. 387, 469 P.2d 64 (1970); Fenkell v. Fenkell, 86 Nev. 397, 469 P.2d 701 (1970).

The appellant further contends that: (1) Notice of non-renewal of contract was given by a deputy superintendent of the school district rather than the superintendent as required by NRS 391.317; that (2) the appellant was not adequately informed in advance of the board hearing of specific facts which supported the charges against him; (3) he was not admonished regarding the alleged violations prior to notice of non-renewal nor was he allowed sufficient time for improvement as required by NRS 391.313; (4) he was never notified of, nor was he informed as to the availability of rules of procedure adopted by the State Board of Education and applicable to hearings conducted by boards of trustees of school districts; and (5) illegal evidence was introduced before the board in the nature of memos, reports and written documents taken from the appellant's personnel file.

2. The appellant participated fully in the hearing before the board and the alleged procedural errors were never raised at that hearing but were raised for the first time in his brief filed with the district court. It must be deemed that they have been waived if in fact they ever existed. Chiatovich v. Young, 61 Nev. 286, 127 P.2d 218 (1942). In any event, none of the alleged errors go to the question of jurisdiction or cause.

3. The appellant also claims that he was denied due process of law when the president of the board refused to allow him to reopen his case in order to call witnesses. At the conclusion of his presentation the appellant was specifically asked if he had any other witnesses. He told the president of the board that he had none and the president proceeded with the hearing. Thereafter the appellant interrupted and indicated that he wished to call certain persons who were present. Now, he contends that he was denied due process when he was precluded from reopening his case. He never revealed the identity of the prospective witnesses, nor did he make an offer of proof to indicate what testimony might have been elicited. We have

nothing before us upon which to determine whether he was in any way prejudiced. The burden is upon the appellant to demonstrate from the record that he has been prejudiced by the claimed error. Tobin v. Seaborn, 58 Nev. 432, 82 P.2d 746 (1938). In Re Gamble, 93 S.E.2d 66 (N.C. 1956).

Where the record fails to show what an appellant expected to prove by the testimony of a witness, no prejudice is shown and none will be presumed. Grosjean v. Spencer, 140 N.W.2d 139 (Iowa 1966); In Re Gamble, supra; Barringer v. Weathington, 182 S.E.2d 239 (N.C.App. 1971); Shaver v. Shaver, 478 S.W.2d 871 (Tex.App. 1972); 4 C.J.S. Appeal and Error § 291; 5 Am.Jur.2d Appeal and Error § 604. If a litigant fails to disclose to the trier of fact the nature of the testimony sought to be offered it is not error for the trier of fact to refuse to allow the litigant the opportunity to introduce further testimony after he has rested his case. United Hardware-Furniture Co. v. Blue, 52 So. 364 (Fla. 1910). Here upon the entire record it appears that the appellant was accorded full due process of law.

4. Finally the appellant contends that the evidence presented to the board did not, as a matter of law, support a finding of cause for non-renewal of his contract.

The exhibits, together with some testimony by the school district's witnesses, and the testimony of the appellant[3] before the board clearly revealed that appellant had informed his daughters, who were students at the school where he taught,

---

[3][Mr. Meinhold]: "I am perfectly glad we are going into all the evidence Mr. Schnepp has presented, but I did want to read a statement, what you call an opening statement, with regard to the findings of the Professional Review Panel, and the Professional Review Panel supported Mr. Schnepp on all of his charges beginning with the first one, unprofessional conduct.

"I would like to read that charge so that everyone in the audience can hear. Unprofessional conduct: Mr. Meinhold stated to the Panel his children had been given permission by him to remain out of school whenever they so desired. He also stated several times publicly and to the Panel school was harmful to children and should be discontinued. There was a transcript of this meeting of the Professional Review Panel. I would be willing to stand corrected, but those are not my words with regard to this 'should be discontinued,' since that says—I stated that I am being misquoted. I have, though, on a number of occasions stated that schools are harmful for children and I did so state to the Professional Review Panel. . . ."

[Cross-examination] BY MR. PETRONI [Attorney for the school district]:

"Q. Getting back to your children not being in school, it is your

that they need not attend school if they were not so inclined and as a result they were absent a substantial part of the time, resulting in action by the civil authorities.

In support of his position that, as a matter of law, the evidence did not support the board's conclusion and recommendation, the appellant relies on Richardson v. Board of Regents

---

belief or statement that you did not believe in obeying the law in the school attendance?

[Mr. Meinhold] "A. No, I never said that. I am afraid I am going to have to go into some detail on this with regard to the school attendance of my daughters.

"Two of them are Garside students, as he mentioned earlier. My daughters know that on those days they choose not to go to school they are not going to be forced to go to school. I am in total disagreement with the compulsory school attendance law. I was somewhat remiss with regard to the law. I didn't know how stringent it was. I really didn't realize the wording of the law until, it must have been Mr. Schnepp or one of the people at Garside, started some kind of truancy action against my oldest daughter and we were required, as he stated earlier, to go to a hearing, and at that time I was presented with the fact with regard to the law. Since then that particular daughter has quite regular attendance, but again I don't force her. She was quite put out by the whole procedure, including the hearing with the gentleman out at Bonanza road, and attended school fairly regularly from there on.

"Q. I am not quite clear—

"A. I am not advocating breaking the law for anyone else.

"Q. You say you are not familiar with the law. Aren't you required to take Nevada School Law to receive a certificate?

"A. We took a test which is about like all other tests. We came in Saturday morning, because I wasn't a resident, you see, and I passed with fairly high scores, which doesn't mean I know Nevada School Law. There is a great deal to it. . . ."

[Mr. Cantor of the board, questioning Mr. Meinhold]:

"On unprofessional conduct I am not especially concerned about what you believe, but I am concerned about what you advocate, in a certain contest. Now, you advocate that children or parents—let me rephrase it. Do you advocate that children should not attend school or parents should not send them to school?

[Mr. Meinhold] "THE WITNESS: No.

"MR. CANTOR: Then I take it, then, the amount of your advocacy is limited to the law should be changed somehow?

"THE WITNESS: The compulsory school attendance law, I think they should have a choice, is what I am saying.

"MR. CANTOR: As long as it is law do you go along with the idea it has got to be obeyed?

"THE WITNESS: I can't answer that question.

"MR. CANTOR: All right. Now, as I understand it, you did not have any children in Garside; is that correct?

"THE WITNESS: Two.

"MR. CANTOR: I am sorry.

"THE WITNESS: Two daughters.

"MR. CANTOR: You have two children of your own there?

"THE WITNESS: Right."

and Boswell v. Bd. Med. Ex., 72 Nev. 20, 293 P.2d 424 (1956). Although the *Richardson* case tends to support the appellant's contention with reference to some of the other charges levied against him, it does not support his position in regards to the charge of unprofessional conduct because Richardson was not accused of unprofessional conduct. In Boswell v. Bd. Med. Ex., supra, Boswell was charged with unprofessional conduct, but that case can be distinguished because the charge was based entirely upon extremely harsh criticism levied against other doctors and members of the medical profession in his community. There this Court said: "It has never been held that the public health, safety or morals requires protection through the suppression of criticism of individual doctors or criticism of the medical profession as a whole, no matter how harsh the terms in which such criticism is expressed." See Pickering v. Board of Education, infra. Here the unprofessional conduct was based in part upon the appellant's conduct in refusing to require his daughters to attend school in defiance of the laws of this state. NRS 312.100–392.220. We believe this to be sufficient cause to support the board's finding of unprofessional conduct. Without citing any authority the appellent contends that the grounds for dismissal specifically charged against the appellant are without defined standards and guidelines and are constitutionally vague and in violation of fundamental due process. In Moore v. Board of Trustees this court adopted with approval the language from in In re Mintz, 378 P.2d 945, 948 (Ore. 1963): ". . . [T]he variety of forms which unprofessional conduct may take makes it infeasible to attempt to specify in a statute or regulation all of the acts which come within the meaning of the term. The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case. . . ." Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951); Board of Education of City of Los Angeles v. Swan, 261 P.2d 261 (Cal. 1953); cf. Friedman v. State, 249 N.E.2d 369 (N.Y. 1969).

Teachers may not be compelled to relinquish the First Amendment rights that they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of public schools in which they work, absence of proof of false statements knowingly or recklessly made. Pickering v. Board of Education, 391 U.S. 563, 20 L.Ed. 811, 88

S.Ct. 1731 (1968).[4] Here, however, the appellant persisted in authorizing and encouraging his daughters not to attend school and he indicated that he would continue to allow his daughters to be truant in violation of the law.[5] NRS 312.100 to 312.202. It was this conduct and not any statements he made which were productive of harmful disorganization and chaos among the students, teachers and administrators not only Garside Junior High School but throughout the entire school system.

The appellant expressed disagreement with the laws requiring compulsory attendance at school and his carrying of that attitude into effect was a prerogative he was entitled to indulge but with it went the price that he might not be rehired. This conduct on the part of the appellant evidenced a lack of professional fitness and responsibility to the teaching profession and to the school system.

A teacher's influence upon his pupils is not limited to what he says and does in the schoolroom and a teacher's right to teach cannot depend solely upon his conduct in the schoolroom. Kaplan v. School Dist. of Philadelphia, 130 A.2d 672 (Pa. 1957); Jarvella v. Willoughby-Eastlake City Sch. Dist. 233 N.E.2d 143 (Ohio 1967). In Johnson v. Taft School Dist., 65 P.2d 912 (Cal.App. 1937), unprofessional conduct was established by evidence showing a long drawn out course of conduct on the part of the teacher that produced serious friction in the school and showed insubordination on her part and a refusal to conform to the instructions and requirements of her superiors. Laba v. Board of Ed. of Newark, 129 A.2d 273 (1957). In Robel v. Highline Public Schools, District No. 401, 398 P.2d 1 (Wash. 1965), it was held that classroom organization, control and discipline are so vital to the success of a

---

[4]See Board of Education of City of Los Angeles v. Swan, 261 P.2d 261 (Cal. 1953), where it was held that derogatory utterances concerning the school board made by a teacher outside of classrooms amounted to unprofessional conduct and constituted sufficient grounds for dismissal. Also in Laguna Beach Unified School District v. Lewis, 304 P.2d 59 (Cal.App. 1956), it was held that derogatory and disloyal utterances made against this country by a teacher amounted to unprofessional conduct and constituted sufficient grounds for dismissal.

[5]In Vance v. Board of Ed. of Pekin Com. H. Sch. Dist. No. 303, 277 N.E.2d 337 (Ill.App. 1971), the dismissal of a teacher was upheld when he was advised teenage students demonstrate and walk out of school in order to obtain "student power," and where he indicated that in the future under like circumstances he would conduct himself as he had in the past.

teaching program that failure of a teacher in this area was sufficient cause for non-renewal of a contract.

The trial court found, as a matter of law, that the evidence presented to the board was sufficient to sustain any or all of the enumerated grounds for dismissal. The board had the right to weigh the evidence, resolve conflicts in the evidence, to judge the credibility of witnesses and to find the facts relevant to the issues. The appellant was not rehired for *cause,* a cause which he and he alone created. The evidence is sufficient to sustain the charge of unprofessional conduct. (NRS 391.312(1)(c).) That finding is sufficient to support the judgment and a consideration of the remaining charges becomes unnecessary. Appeal of School District of City of Bethlehem, 32 A.2d 565 (Pa. 1943); Board of Education of Richmond Sch. Dist. v. Mathews, 308 P.2d 449, 452 (Cal.App. 1957).

Affirmed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and ZENOFF, JJ., concur.