BERT STEVENS, Appellant, v. WARDEN CARL HOCKER and PERSONNEL ADVISORY COMMISSION, Respondents.

No. 7639

June 11, 1975                         536 P.2d 88

*Sanford, Sanford, Fahrenkopf & Mousel* and *Charles M. McGee,* of Reno, for Appellant.

*Robert List,* Attorney General, and *Patrick D. Dolan,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Bert Stevens, who had been employed as a correctional officer at the Nevada State Prison since May 1963, was, on August 2, 1971, dismissed from his employment by the Warden for specified off-duty conduct. The Warden's decision to discharge Stevens was affirmed by the Personnel Advisory Commission, and in turn, by the district court. He has appealed to this court for relief.

It is without dispute in the record that Stevens had been a faithful and competent employee at the prison for many years. This is stipulated to be so.

On August 1, 1971, Stevens was arrested in a public place and charged with disorderly conduct arising from his intoxication and use of abusive language to the arresting officer who was attempting to stop a quarrel between Stevens and his wife. This isolated, off-duty transgression prompted the Warden to dismiss Stevens from state service the following day. Stevens pleaded nolo contendere to the charge, and on August 5, judgment was entered against him. Sentencing was continued for 90 days, at which time the court would allow entry of a plea of not guilty and entertain a motion to dismiss the action. This apparently occurred, although the record is not entirely clear in this regard.

The dismissal rests upon asserted violations of certain prison and state personnel administration rules of conduct to which we now turn our attention.

1. The portion of Prison Rule 4127 upon which the Warden relied concerns dismissal of an employee for "any conduct involving intoxicants, drugs, gambling or immorality which results in conviction in any court." Since Stevens was dismissed from service before he entered his plea to the charge and before conviction thereof, reliance upon Rule 4127 was clearly wrong. Indeed, during appellate argument, counsel for respondents conceded this to be so.

2. Prison Rule 4105 reads: "Employees shall maintain at all times a courteous and professional demeanor in dealing with inmates, and act at all times as a member of the Nevada State Prison Staff. They shall not use indecent, abusive or profane language while on duty; they shall avoid conduct that might bring criticism on themselves or the Nevada State Prison." As written, this rule refers to on-duty conduct and, in our view, is not intended to encompass activities of employees while off duty and at a place remote from the prison and environs. The Warden erred in endeavoring to utilize this rule as a reason for dismissing Stevens.

3. Rule 13 of the Rules for State Personnel Administration, subdivisions 5 and 7 thereof, respectively authorize disciplinary action for "notoriously disgraceful personal conduct," and for "conduct detrimental to the good of the institution." The Warden and the Personnel Advisory Commission also relied upon the quoted strictures as additional grounds for the dismissal of Stevens.

The quoted phrases may be too sweeping to be meaningful. They may be so vague and ambiguous as to provide a substantial danger of arbitrary discrimination in their application. Indeed, the appellant Stevens challenges the words used as unconstitutionally vague and overbroad. "Conduct detrimental to the good of the institution" is a phrase so illusive as to embrace an almost unlimited area of conduct. And the words "notoriously disgraceful personal conduct" are almost as illusive in character. Whether the conduct in question falls within the prohibited sphere would appear to be governed by the subjective evaluation of the appointing authority—in this instance, the Warden.

However, we do not choose to rest our decision on constitutional grounds. In Moore v. Board of Trustees, 88 Nev. 207, 495 P.2d 605 (1972), and Meinhold v. Clark County School District, 89 Nev. 56, 506 P.2d 420 (1973), we sustained

disciplinary action for "unprofessional conduct," another phrase without precise meaning. In each instance, however, the conduct in issue bore directly upon fitness to perform the profession involved.

The matter at hand is quite different. There is nothing of substance in the record to suggest that Stevens' off-duty transgression on August 1, 1971, had any bearing at all upon his performance as an employee of the Nevada State Prison. The evidence is to the contrary. His job performance record was good. On writing about the application of such broad phrases to an employee's performance on the job, the California Supreme Court observed: "Terms such as 'immoral or unprofessional conduct' or 'moral turpitude' stretch over so wide a range that they embrace an unlimited area of conduct. In using them the legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval. Hence, the courts have consistently related the terms to the issue of whether, when applied to the performance of the employee on the job, the employee has disqualified himself." Morrison v. State Board of Education, 461 P.2d 375 at 382 (1969).

It is reasonable to relate such broad language to job performance, if such illusory terms are to be tolerated at all. When so related here, it is apparent that there exists no basis for the dismissal of Stevens from state employment.

Accordingly, we order his reinstatement with all accrued back pay and rights, less the amount he has earned in gainful employment since dismissal. He is also entitled to interest on monies due him, his costs below and on appeal. Hardison v. Carmany, 88 Nev. 670, 504 P.2d 1 (1972); Mead v. State of Nevada Dep't of Health, 91 Nev. 152, 532 P.2d 611 (1975).

BATJER and ZENOFF, JJ., concur.

GUNDERSON, C. J., dissenting:

I respectfully dissent.

The prison's security partially depends on concerned cooperation of the Carson City Sheriff's Department, and of police generally. When an off-duty guard vulgarly and drunkenly vilifies members of the Sheriff's Department in a public place, I think his conduct jeopardizes this cooperation, so important to the prison's well-being. Thus, assuming the language of

subdivisions 5 and 7 of Rule 13 must be related to job performance, as the majority think, I suggest the evidence here justified the Warden in finding such a relationship.

In my view, therefore, it was proper for the Warden to find appellant had engaged in "notoriously disgraceful personal conduct," which adversely affected the prison, and "conduct detrimental to the good of the institution." Accordingly, I submit appellant should not be compensated for the discharge his drunken tirade precipitated. Instead, that discharge should be upheld.

MOWBRAY, J., concurs.