NILA R. LAMAN, Appellant, v. NEVADA REAL ESTATE ADVISORY COMMISSION, CARL FUETSCH, ROBERT HASS, ELIZABETH "LIZ" KROLAK, FRED SCHULTZ, OLIVIA SILVAGNI, Constituting the Membership of said Commission, NEVADA REAL ESTATE DIVISION, DEPARTMENT OF COMMERCE, ANGUS W. McLEOD, Administrator of the REAL ESTATE DIVISION, JEANNE HANNAFIN, Deputy Administrator of the REAL ESTATE DIVISION, and R. E. EDMONDSON, Deputy Attorney General, Respondents.

No. 9608

January 17, 1979 589 P.2d 166

[Rehearing denied February 15, 1979]

*Hilbrecht, Jones, Schreck & Bybee,* Las Vegas, for Appellant.

*Richard Bryan,* Attorney General, Carson City, and *Joshua M. Landish,* Deputy, Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

This is an appeal from an order of the district court affirming a decision of the Nevada Real Estate Advisory Commission. We affirm.

## THE FACTS

On July 7, 1976, the Nevada Real Estate Division filed a complaint against appellant, Nila R. Laman, with the Nevada Real Estate Advisory Commission [hereafter Commission]. By her answer, appellant admitted the facts below, as alleged in the complaint.

Appellant at all relevant times held a real estate salesman's license issued by the State of Nevada. On April 3, 1976, appellant accompanied one Tobias C. Miscevic, also a licensed real estate salesman, on an inspection of a Las Vegas condominium unit which was listed for sale by Sahara Realty Company. Appellant returned to her car, leaving Miscevic in the condominium. From her car, she observed Miscevic leaving the premises, carrying a portable fireplace. Appellant then drove Miscevic to his apartment building, where she observed him carry the fireplace up the stairs to his apartment, assisted by his landlord.

On April 5, 1976, appellant was contacted and questioned by Detective Robert Krenn of the Las Vegas Police Department. Appellant subsequently tried to contact Miscevic to urge the return of the fireplace. She was ultimately successful in this attempt, and called Detective Krenn the following day to inform him that the fireplace had been returned.

By her answer, appellant denied the allegation of the complaint that she was aware that the fireplace was the property of the owners of the condominium, illegally in the possession of Miscevic. She further denied that her conduct violated NRS 645.630(9);[1] Commission Rules and Regulations Section VII,

---

[1] NRS 645.630 provides, in pertinent part, that

"The [Nevada Real Estate Advisory] commission may suspend, revoke or reissue subject to conditions any license issued under the provisions of this chapter at any time . . . where the licensee, whether or not acting as a licensee, is found to be guilty of:

. . . .

9. Disregarding or violating any of the provisions of this chapter,

subsection 17;[2] and Code of Ethics, Part I, subsection 2,[3] as charged by the Division.

A hearing was conducted before the Commission, at which appellant was present and represented by able counsel. The Commission heard from Rochelle Hilton, saleswoman for Sahara Realty, who testifed that on April 3, 1976, she had seen a car pulling out of the condominium area with a portable fireplace in its open trunk. She further testified that she went to check the condominium where she had previously observed such a fireplace. When she found it missing, she called her office and the police, to whom she gave the license number of the car. On Monday, April 5, Ms. Hilton discussed the matter with her broker, Gil Schwartz.

Mr. Schwartz testified that he had then contacted appellant's broker, Jack Mathews. He further testified that Mathews called appellant into his office and questioned her in the presence of the witness. According to Schwartz, appellant stated that she had loaned her car to Miscevic on the day in question.

Both Miscevic and appellant were excused from testifying upon their statements that they would stand upon their right to refuse to answer questions which might tend to incriminate them. The Commission did admit written statements signed by both licensees. Appellant's statement described the events of April 3 as follows:

> About 2:30 p.m. we [appellant and Miscevic] were at the Gordon Park Townhouses. We toured the condo's available. [Appellant then suggested they look at the condominium in question] . . . .
>
> I walked into the living room and brought Toby's attention to the portable fireplace. I told him they were great, as I had one in my own condo. Toby continued to tour the unit and I returned to the car. . . .
>
> Toby comes to the car carrying the fireplace. He asked for the keys to the trunk. I couldn't believe he was standing there with the fireplace. I went to the trunk and

---

chapter 119 of NRS or of any regulation promulgated under either chapter."

[2]Nevada Real Estate Advisory Commission Rules and Regulations, Section VII, subsection 17, provides:

"Each licensee shall abide by the Code of Ethics."

[3]Code of Ethics, Part I, subsection 2, provides:

"2. The licensee should do his utmost to protect the public against fraud, misrepresentation or unethical practices in the real estate field.

"He should endeavor to eliminate in his community any practices which could be damaging to the public or to the dignity or integrity of the real estate profession."

removed my dry cleaning and put it on the back seat. I then got in the car and drove to Toby's apartment. I sat in the car while he carried the fireplace up to his apartment. His landlord helped him around a corner and on up the remaining stairs. We then drove back to the office.

According to the statement, appellant did not disclose these facts to anyone until questioned by her broker on April 5.

The Commission found that appellant had been aware that Miscevic was illegally in possession of the fireplace, and had failed to report this. The Commission concluded that appellant's behavior was "extremely damaging to the dignity and integrity of the profession", and that she had "failed to do her utmost to protect the public against unethical practices and in fact committed unethical practices". The Commission ordered appellant's license revoked for violation of the statute, rule and provision of the code of ethics as charged.

Appellant filed an appeal (NRS 645.760) and an application for a writ of review (NRS 34.010, et seq.) in the district court. The district court rejected appellant's appeal and application and upheld the validity and propriety of the Commission's order and decision.

On appeal from that determination, appellant now urges that the court erred in rejecting her contentions that (1) the Commission lacked jurisdiction to consider the charges specified, (2) the ethical provision which she was alleged to have violated was too vague and uncertain to be considered as a basis for discipline, (3) her due process rights were violated by an improper commingling of judicial and prosecutorial functions, (4) the Commission was unconstitutionally constituted, and (5) the Commission improperly admitted (a) a statement signed by the owner of the condominium and (b) her written statement describing the incident.

## THE ISSUES

1. The Commission's Jurisdiction Under NRS 645.630(9).

Appellant suggests that the Commission exceeded its jurisdiction under NRS 645.630(9), (*supra*, n. 1), because "the complaint on file herein alleged that [appellant] committed acts which would constitute the crime of theft or abetting such crime". She contends that the commission is only empowered to discipline licensees for the commission of criminal acts under NRS 645.630(12), which provides for such discipline when a licensee has been found guilty of:

Forgery, embezzlement, obtaining money under false pretenses, larceny, extortion, theft, fraud, conspiracy, a

crime involving moral turpitude or other like offense, whether arising from a real estate transaction or not, and has been *convicted* thereof in a court of competent jurisdiction. (Emphasis added.)

Appellant's contention, however, ignores the posture of the case before the Commission. The complaint alleged, and the Commission so found, that she was guilty, not of theft, but of violating the code of ethics of her profession by failing to do her utmost to protect the public against unethical practices or to eliminate practices damaging to the public or to the dignity or integrity of the real estate profession. Under NRS 645.630(9), and the Rules and Regulations promulgated thereunder, the Commission is empowered to impose discipline upon a licensee for violation of the code of ethics, without reference to any potential criminal liability.

Appellant argues, nevertheless, that NRS 645.630(12) must be read to deprive the Commission of such jurisdiction so long as there is any possibility that the conduct found to be a violation of the code of ethics might also provide the basis for a charge that the licensee had committed a crime. We do not agree. There is no basis in the statutory language, or in logic, for concluding that the legislature intended to immunize from disciplinary action a licensee accused of unethical conduct on grounds serious enough to warrant criminal charges as well. *See* State Board of Technical Registration v. McDaniel, 326 P.2d 348, 353 (Ariz. 1958). Appellant suggests that this result would in some way compromise the fifth amendment rights of licensees. The record in this case refutes such a suggestion.

Appellant's right to invoke the fifth amendment at hearing was fully protected by the Commission, and there is no basis in the record for concluding that the Commission drew any adverse inference from her refusal to testify. *Cf.* Rudin v. Nevada R. E. Advisory Comm'n., 86 Nev. 562, 471 P.2d 658 (1970). The fifth amendment does not require more. *See* De Vita v. Sills, 422 F.2d 1172 (3d Cir. 1970) (denial of application for stay of disbarment proceedings until completion of pending criminal proceedings does not violate privilege against self-incrimination).

We conclude that the Commission was acting within its jurisdiction in subjecting appellant to discipline for conduct found violative of NRS 645.630(9).

2. The Charge of Vagueness of The Code of Ethics.

Appellant contends that the provisions of the Code of

Ethics, Part I, subsection 2, requiring a licensee to "do his utmost to protect the public against fraud, misrepresentation or unethical practices in the real estate field" and to "endeavor to eliminate in his community any practices which could be damaging to the public or to the dignity or integrity of the real estate profession" are too vague and uncertain to provide a constitutional basis for imposition of discipline.

In Stevens v. Hocker, 91 Nev. 392, 536 P.2d 88 (1975), this court described the due process limitation upon use of vague and uncertain language in personnel or professional disciplinary rules. Such rules must not be "so vague and ambiguous as to provide a substantial danger of arbitrary discrimination in their application" or "so elusive as to embrace an almost unlimited area of conduct". 91 Nev. at 394, 536 P.2d at 90.

In *Stevens,* we ruled that such general phrases as "notoriously disgraceful personal conduct" and "conduct detrimental to the good of the institution" *could* provide a valid basis for dismissal of a state employee if they were interpreted to relate directly to the issue of the employee's fitness to perform his job. We noted that in Moore v. Board of Trustees, 88 Nev. 207, 495 P.2d 605, *cert. denied,* 409 U.S. 879 (1972), and Meinhold v. Clark County School District, 89 Nev. 56, 506 P.2d 420, *cert. denied sub nom.* Meinhold v. Taylor, 414 U.S. 943 (1973), "we sustained disciplinary action for 'unprofessional conduct', . . . [when] the conduct in issue bore directly upon fitness to perform the profession involved." 91 Nev. at 394-95, 536 P.2d at 90.

In the instant case, the rules in question are not so vague as to invite "arbitrary and discriminatory enforcement". Greyned v. City of Rockford, 408 U.S. 104, 108 (1972). As in *Moore* and *Meinhold,* the terms were interpreted with particular reference to appellant's fitness to practice her profession.

We hold that appellant's right to due process of law was not violated by the application of the standard contained in the Code of Ethics, Part I, subsection 2, to her conduct.

3. The Commingling of Judicial and Prosecutorial Functions.

Appellant contends that there was an improper commingling of judicial and prosecutorial functions during the Commission proceedings in that a Deputy Attorney General participated by advising the Commission on evidentiary matters, while his subordinate in the same office was engaged in prosecuting appellant. This contention, unsupported by case authority, is

adequately answered by this court's ruling in Rudin v. Nevada Real Estate Advisory Commission, *supra,* 86 Nev. at 565, 471 P.2d at 660:

> It is not uncommon in administrative law to find the combination of investigating, prosecuting and judging functions. As a general proposition, such a combination, standing alone, does not constitute a denial of due process. 2 Davis, Administrative Law Treatise § 13.02. Such combination of functions possesses the potential for unfairness, but unfairness is not its inevitable consequence. In the matter at hand that combination did not exist. The investigation was conducted by investigators, the prosecution, by counsel for the Commission, and the decision was made by the Commission itself. There is nothing to suggest that the prosecutor decided the case.
> . . .

Here, the separation was even more clearly defined. The Commission alone performed all adjudicative functions, including rulings on evidentiary matters. There was, therefore, no violation of NRS 233B.122(1).[4]

Appellant has demonstrated no improper commingling of judicial and prosecutorial functions violative of due process, or of Nevada's Administrative Procedure Act.

4. The Appellant's Right to Equal Protection.

Appellant contends that since all members of the Commission must by statute be brokers (NRS 645.090(3)), and since the legislature has also provided that the governor "shall obtain and consider" a list of nominees for the Commission from the Nevada Association of Realtors (NRS 645.050(1)), she has been deprived of equal protection of the law, because appellant is a salesperson and not a broker. Appellant has cited no case authority for her position.[5]

Appellant has failed to demonstrate that her right to equal protection of the law was violated by the statutory composition of the Commission.

5. The Admissibility of the Evidence.

a. Appellant's written statement.

---

[4]NRS 233B.122(1) provides:

"No agency member who acts as an investigator or prosecutor in any contested case may take any part in the adjudication of such case."

[5]Appellant has cited one case, Smith v. Department of Registration, 106 N.E.2d 722 (Ill. 1952), in which the court held the dissimilar treatment of two physicians in identical circumstances violative of equal protection, citing Yick Wo v. Hopkins, 118 U.S. 356 (1886). However, appellant does not contend here that she has been treated differently from any other licensee in identical circumstances.

Appellant contends that her written statement, dated April 15, 1976, and submitted to a Division investigator on April 16, 1976, should have been excluded under NRS 48.105,[6] as a statement "made in compromise negotiations".

Appellant's contention is based upon her assertion, by affidavit submitted to the district court, that her statement was made in connection with her desire for an "expeditious and less harsh resolution" of the charges against her. The statement itself is an unqualified assertion of facts. There is no suggestion that it did not represent appellant's "true belief as to the facts". Hiram Ricker & Sons v. Students Inter. Meditation Soc., 501 F.2d 550, 553 (1st Cir. 1974). In the circumstances, the statement was properly viewed as an admission, and was properly admitted as such. *Id; see* also City Bank of Honolulu v. Rivera Davila, 438 F.2d 1367 (1st Cir. 1971); 4 Wigmore, Evidence § 1061, at 41–42 (Chadbourn rev. 1972).

b.   Affidavit of Daniel Alexander.

Over the objection of counsel for appellant, the Commission admitted into evidence a statement, signed by Daniel Alexander before a notary in Los Angeles, California, on June 18, 1976. The substantive portion of the typed statement read:

> I freely and voluntarily give this affidavit to DUANE DEMAY who is known to me as INVESTIGATOR for the Nevada Real Estate Division. I DID NOT AUTHORIZE OR GIVE PERMISSION TO ANYONE, AT ANY TIME, TO REMOVE A PORTABLE ELECTRIC FIRE-PLACE OR ANY OTHER PERSONAL PROPERTY FROM MY HOUSE LOCATED AT 3455 GARDEN DRIVE SOUTH IN LAS VEGAS, NEVADA. I will not be available to appear as a witness in any proceeding relating to the above matter. As of July 1, 1976, I will be residing in the State of Florida.
>
> I have read the foregoing affidavit consisting of (1)

---

[6]NRS 48.105:

"1.   Evidence of:

(a) Furnishing or offering or promising to furnish; or

(b) Accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

2.   This section does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

pages, and it is true and correct to the best of my knowledge and belief.

Appellant suggests that the admission of this statement, and the Commission's purported reliance thereon, is a violation of NRS 645.690(2), which provides that at the hearing required before the revocation or suspension of a real estate license,

> the licensee shall be entitled:
> (a) To examine, either in person or by counsel, any and all persons complaining against him, as well as all other witnesses whose testimony is relied upon to substantiate the charge made.

We agree. In Greene v. McElroy, 360 U.S. 474 (1959), the United States Supreme Court overruled the administrative revocation of petitioner's security clearance on the basis of reports made to government investigators. While noting the due process challenge of petitioner, the Court chose to rest its holding upon statutory grounds, refusing to interpret the statute in question as authorizing the Department of Defense

> to create an industrial security clearance program under which affected persons may lose their jobs and may be restrained in following their chosen professions on the basis of fact determinations concerning their fitness for clearance made in proceedings in which they are denied the traditional procedural safeguards of confrontation and cross-examination.

360 U.S. at 493. The Court, in condemning the practices of the administrative board, noted that "the *testimony* of absent witnesses" was allowed "to stand without the probing questions of the person under attack". *Id.* at 497. (Emphasis added.)

While respondents urge that "testimony", as used in NRS 645.690(2)(a), refers exclusively to the sworn statements of witnesses *at trial or hearing,* it is clear from the use of the term by the Court in *Greene* that the term does have a broader meaning. Respondents rely upon the primary definition of the term in *Black's Law Dictionary,* 1646 (rev. 4th ed. 1968): "Evidence given by a competent witness, under oath or affirmation; as distinguished from evidence derived from writings, and other sources." However, *Black's Law Dictionary, Id.,* at 1778, defines "witness" as "A person whose declaration under oath (or affirmation) is received as evidence for any person, whether such declaration be made on oral examination *or by* deposition or *affidavit.*" (Emphasis added.)

Thus interpreted, we hold that NRS 645.690(2)(a) is applicable to the Alexander affidavit. The remaining question is whether the Commission "relied upon" that affidavit for its factual findings, in violation of its statutory authority. Appellant contends that without the affidavit, there is no competent evidence in the record to support the finding that "[a]t all times [appellant] was aware that the fireplace was the property of the owners of the condominium and that it was illegally in possession of Tobias Miscevic". We disagree.

A review of the evidence, and of the facts admitted by appellant, reveals the contrary. The Commission had before it ample evidence from which the conclusion reached in the challenged finding could reasonably have been inferred. Therefore, the district court's decision and order upholding the Commission need not be reversed on this ground. *See* Nardoni v. McConnell, 310 P.2d 644 (Cal. 1957); Richards Realty Co. v. Real Estate Commissioner, 300 P.2d 893 (Cal.App. 1956); Dittmeier v. Missouri Real Estate Commission, 237 S.W.2d 201 (Mo.App. 1951).

We conclude, therefore, that the Commission did not exceed its jurisdiction by considering allegations which may have provided a factual basis for a criminal charge; that the provisions of the real estate Code of Ethics, Part I, subsection 2, as interpreted and applied in this case are not too vague and uncertain to provide a constitutional basis for disciplinary action; that there was no improper commingling of judicial and prosecutorial functions during the Commission proceedings; that the composition of the Commission did not violate appellant's right to equal protection under the law, and that the Commission was not required by NRS 48.105 to exclude the written statement of appellant. Finally, although the Commission was not entitled to rely upon the affidavit of Alexander to support its findings, there was sufficient substantial evidence in the record apart from the affidavit to support the Commission's decision.

For these reasons, the decision and order of the district court affirming the decision of the Nevada Real Estate Advisory Commission is affirmed.

THOMPSON, GUNDERSON, BATJER, AND MANOUKIAN, JJ., concur.