THE NEVADA STATE BOARD OF DENTAL EXAMINERS, APPELLANT, *v.* GARY D. TOOGOOD, D.D.S., RESPONDENT.

No. 11304

May 26, 1981                                    628 P.2d 301

*Diehl, Recanzone & Evans,* Fallon, for Appellant.

*Petersen & Petersen,* and *Johnson, Belaustegui & Robison,* Reno, for Respondent.

## OPINION

By the Court, BATJER, J.:

The Nevada Board of Dental Examiners (Board), appellant, filed an administrative complaint on November 16, 1976, against respondent Gary D. Toogood, a licensed dentist. The complaint alleged that Toogood was guilty of dishonorable and unprofessional conduct, as defined in Chapter 631 of the Nevada Revised Statutes. Subsequently, the Board held a hearing on the charges.

A patient who was also a friend of the respondent's asked the doctor if he would allow him to order schedule II controlled substances through his office enabling the patient to secure the drugs at wholesale prices. *See* NRS 453.171. The patient represented to the respondent that he wanted the drugs for his father, who was ill. From June, 1971, to January, 1976, the patient secured large quantities of schedule II controlled substances, including secobarbital, chloral hydrate, APC with codeine phosphate, Woltussin A.C. syrup, amphetamine sulphate, codeine sulphate, amphetamines, and butabarbital sodium.

The respondent testified that he furnished the drugs to the patient and that they were not furnished as part of any medical treatment of the patient. (An investigator for the Nevada State Division of Investigations and Narcotics testified at the Board's hearing that he interviewed the patient's father's doctor who emphatically denied that the patient's father had taken the furnished drugs.) Respondent also testified that he did not keep track of the quantity of drugs or the frequency with which the patient was ordering them. However, he did say that he knew that the patient was ordering drugs.

The Board found that respondent had furnished the drugs to the patient outside the practice of dentistry and that his conduct constituted dishonorable and unprofessional conduct as provided in NRS Chapter 631. He was suspended from the

practice of dentistry for three months commencing May 15, 1977, and was required to relinquish his license to obtain and dispense controlled substances.

Respondent filed a petition for judicial review under NRS 233B in the district court. The district court found the Board's requirement that respondent relinquish his license to dispense controlled substances fair, just and proper punishment.[1] It went on to find NRS 631.050(2) to be unconstitutionally overbroad and vague as *applied in this case,* and vacated the Board's order suspending Toogood from practice for three months upon the ground that the order was arbitrary and capricious. It is from this ruling that the Board appeals.

The Board contends that the district court erred when it (1) found NRS 631.050 to be unconstitutional as applied to this case and (2) when it substituted its judgment for that of the Board in the matter of discipline.

1. Although concluding that NRS 631.050(2) is constitutional on its face, the district court found it to be unconstitutional as applied in this case. It found that in the absence of a conviction involving "moral turpitude" or at least the establishment of the commission of acts which clearly involve moral turpitude, the term "unprofessional conduct" as used in NRS 631.050(2) is unconstitutionally overbroad and vague as applied in this case.

NRS 631.050(1),[2] subsections (a) through (r), expressly enumerate certain acts which constitute dishonorable or unprofes-

---

[1]The State Board of Pharmacy and Toogood stipulated that Toogood relinquish his narcotic dispensing license. That portion of the Board's decision is not in issue on this appeal.

[2]NRS 631.050(1) provides:

1. As used in this chapter, "dishonorable or unprofessional conduct" is declared to include:

(a) Conviction of a felony or misdemeanor involving moral turpitude, or conviction of any criminal violation of this chapter; or

(b) Employing, directly or indirectly, any student or any suspended or unlicensed dentist to perform operations of any kind in treating or correction of the teeth or jaws, except as provided in this chapter; or

(c) The publication or circulation, directly or indirectly, of any fraudulent, false or misleading statement as to the skill or method of practice of any dentists; or

(d) The use of advertising in which reference is made to any anesthetic, drug, formula, material, medicine, method or system used or to be used; or the advertising of the performance of any dental operation without causing pain; or the advertising of any free dental service or examination as an inducement to secure dental patronage; or the advertising of price, cost, charge, fee or terms of credit for the services performed or to be performed, or for material used or to be used, by any person engaged as

sional conduct under the Nevada Dental Act. NRS 631.050(2)[3] generally provides that the enumeration of the acts in subsection 1 shall not be construed as a complete definition of dishon-

principal or agent in the practice of dentistry; or the advertising of a guarantee for any dental services; or the advertising of artificial teeth or dentures with or without the use of any representation of a tooth, teeth, bridgework or denture, or of any portion of the human head, or the exhibition or use of specimens of dental work, large display signs, glaring light signs, electric or neon, or any signs, posters or other media calling attention of the public to any person engaged in the practice of dentistry. Any person taking up or retiring from the practice of dentistry, changing his place of business or business telephone, or who intends to absent himself from, or return to, his place of business may advertise such fact in a newspaper for not more than 3 successive publications, which advertisement shall not exceed 2 column inches; or

(e) The claiming or inferring of professional superiority over neighboring practitioners; or ·

(f) The giving of a public demonstration of skill or methods of practicing upon or along the streets or highways or any place other than the office where the licensee is known to be regularly engaged in his practice; or

(g) Fraud or misrepresentation in connection with the securing of a license; or

(h) Willful or repeated violations of the rules of the board of health; or

(i) Division of fees or agreeing to split or divide the fees received for services with any person for bringing or referring a patient, without the knowledge of the patient or his legal representative, but this shall not be construed to forbid licensed dentists from practicing in a partnership and sharing professional fees, to forbid a licensed dentist from employing another licensed dentist or dental hygienist, or to forbid a licensed dentist from rendering services as a member of a nonprofit professional service corporation; or

(j) Employing, procuring, inducing, aiding or abetting a person not licensed or registered as a dentist to engage in the practice of dentistry; but the patient practiced upon shall not be deemed an accomplice, employer, procurer, inducer, aider, or abettor within the meaning of this chapter; or

(k) Professional connection or association with, or lending his name to, anyone who is engaged in the illegal practice of dentistry; professional connection or association with any person, firm or corporation holding himself, themselves, or itself out in any manner contrary to this chapter; or

(l) Use of the name "clinic," "insitute," or other title or designation that may suggest a public or semipublic activity; or

(m) Failure to pay license fees; or

(n) Chronic or persistent inebriety, or addiction to a controlled substance as defined in chapter 453 of NRS, to such an extent as to render him unsafe or unreliable as a practitioner, or such gross immorality as tends to bring reproach upon the dental profession; or

(o) Willful negligence in the practice of dentistry or dental hygiene; or

(p) Practice by a dental hygienist in any place not authorized by this chapter; or

(q) Practice while his license is suspended or without a renewal certificate; or

(r) Practicing under a false or assumed name.

[3]NRS 631.050(2) provides:
The enumeration of the acts in subsection 1 shall not be construed as a

orable or unprofessional conduct or as limiting or restricting the Board from holding that other or similar acts constitute unprofessional or dishonorable conduct.

Appellant claims that NRS 631.050 does not require conduct involving moral turpitude and in fact only subsections (a), (g) and (o) contain any implication of moral turpitude.

A review of the record in this case clearly establishes "unprofessional and dishonorable conduct" on the part of respondent. *See* NRS 631.050.

The furnishing of schedule II controlled substances to someone who is not a patient is contrary to NRS 453.381. There was never a question that the respondent willfully allowed the patient "carte blanche" authority to secure the drugs wholesale. The respondent admitted that he failed to supervise his office personnel adequately so as to know the extent of which the patient was ordering the drugs. *See* Moore v. Board of Trustees, 88 Nev. 207, 495 P.2d 605 (1972).

We believe that the respondent's conduct clearly falls within NRS 631.050(1)(o): "Willful negligence in the practice of dentistry . . ." The action of the Board can be affirmed on that ground. It was unnecessary for the district court to reach the questions of the constitutionality of NRS 631.050(2), and its finding of unconstitutionality amounts to a nullity.

2. The district court found:

> That the Petitioner has already suffered substantial prejudice and punishment as a result of press publicity in connection with attempted criminal charges arising from the same alleged conduct which was the subject of the administrative complaint against him, and the mental anguish and concern arising from such criminal charges which were ultimately dismissed as being without sufficient legal basis.

The appellant argues that the district court substituted its judgment for that of the Board's as to the punishment appropriate for Toogood. Appellant's contention has merit.

The district court, in its decision, states:

> The ultimate issue presented to this court is what should be the appropriate result and punishment to be imposed herein?

---

complete definition of dishonorable or unprofessional conduct, or as authorizing or permitting the performance of other and similar acts, or as limiting or restricting the board from holding that other or similar acts constitute unprofessional or dishonorable conduct.

The standard of judicial review within NRS 233B as set forth in NRS 233B.140(5)[4] precludes the reviewing court from substituting its judgment for that of the agency.

Our review of the record fails to show that the Board acted in an arbitrary or capricious manner or abused its discretion in imposing the three month suspension. Accordingly, the district court's modification of that suspension is reversed and the Board's findings of fact, conclusions of law and decision filed April 11, 1977, is reinstated.

GUNDERSON, C. J., and MANOUKIAN, SPRINGER, and MOWBRAY, JJ., concur.

---

[4]NRS 233B.140(5) provides:

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced before the administrative findings, inferences, conclusions or decision are:

(a) In violation of constitutional or statutory provisions;

(b) In excess of the statutory authority of the agency;

(c) Made upon lawful procedure;

(d) Affected by other error of law;

(e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or

(f) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.