ALAN J. MISHLER, M.D., APPELLANT, *v.*
GEORGETTE McNALLY, RESPONDENT.

No. 16492

December 23, 1986                    730 P.2d 432

*Eugene J. Wait, Jr.,* Reno, *Lionel, Sawyer & Collins* and *David N. Frederick,* Las Vegas, for Appellant.

*Echeverria, Osborne & Jenkins,* Reno, for Respondent.

626

# OPINION

*Per Curiam:*

In this appeal from a judgment upon jury's verdict for plaintiff-respondent for $1,149,262.81 in a medical malpractice action, defendant-appellant assigns several of the district court's rulings as error. We conclude that the trial was irreparably tainted by an erroneous ruling on the admissibility of certain evidence, thereby depriving appellant of his right to a fair trial. Accordingly, we reverse and remand this case for a new trial.

## The Facts

In 1980, plaintiff-respondent Georgette McNally began experiencing pain in her chest, neck, right shoulder and head. After performing a myelogram and finding an abnormal widening in the cervical spine and evidence of pressure on the sixth cervical nerve root, neurosurgeon John Davis performed a laminectomy and intradural exploration to view the cervical region. Davis concluded that the spinal cord and roots were normal. Following this surgery, respondent's headaches and chest discomfort were relieved, but her arm pain worsened. Because of his concern over a lack of diagnosis, Dr. Davis referred respondent to a medical center for further evaluation of her pain.

Respondent instead consulted defendant-appellant neurosurgeon Alan Mishler, M.D., who performed a cervical anterior diskectomy with interbody fusion to remove disk material protruding into the spinal canal. Following this operation, respondent reported tingling and numbness in both hands from the wrists down and had no pin prick perception in her right upper arm.

A psychiatrist examined respondent and concluded that respondent's problems were psychogenic. Thereafter, respondent consulted neurosurgeon Louis Levy, who attempted to anesthetize her nerves to alleviate the pain. Levy referred respondent to

neurosurgeon Yoshi Hosobuchi, who proposed implanting electrodes in her brain and using electrical impulses to suppress the pain. Respondent's pain has since continued to increase. The tingling and numbness has now moved into her hip and leg, she cannot hold or manipulate objects, and she has difficulty walking without stumbling. In August 1983, respondent instituted this cause of action for medical malpractice, naming both Dr. Mishler and the Washoe County Medical Center (hereinafter "the hospital"), where the diskectomy was performed.

At trial, respondent's expert Hosobuchi characterized Dr. Mishler's extension of respondent's neck during surgery over a small sandbag and his failure to use magnification to assist his vision in removing the disk fragments as below the relevant standard of care. Hosobuchi concluded that Dr. Mishler's intervention caused probable nerve damage and that Dr. Mishler did not remove all of the disk material that should have been removed. Levy, respondent's second expert witness, concurred with Hosobuchi, but admitted that the suggestion of spinal cord damage from failure to remove all disk material was not consistent with the increase in respondent's pain between Davis' and Dr. Mishler's treatment. Levy also admitted that although Dr. Mishler only operated at one level of respondent's spine, respondent now has symptoms indicating abnormalities at several levels. Both Hosobuchi and the chief of neurosurgery at the hospital acknowledged that other neurosurgeons did not use magnification in performing diskectomies.

Neurosurgeon Arthur Lyons, Dr. Mishler's expert witness, concluded that Dr. Mishler's conduct in surgery conformed to the relevant standard of care. Lyons believed that respondent's neck was not overly extended during surgery and that the use of a microscope during the operation was unnecessary to meet the standard of care. Lyons found no spinal injury trauma and no residual disk material in respondent's body after the surgery. Lyons reached this conclusion because (1) respondent's postoperative symptoms involve nerves exiting the spinal column at levels other than where Dr. Mishler's surgery was performed and (2) a spinal cord injury would have manifested itself immediately, whereas respondent has exhibited slow, progressively worsening symptoms. Lyons concluded that respondent's symptoms were consistent with a tumor or cyst growing in her spinal cord. Lyons further concluded that electrical impulse treatment to suppress pain was not appropriate and recommended noninvasive nuclear magnetic resonance testing. Respondent stipulated to the dismissal of the hospital at the conclusion of her case-in-chief. The jury awarded respondent $1,149,262.81 in damages and this appeal followed. Dr. Mishler assigns several of the district

court's rulings as error. We conclude that an erroneous evidentiary ruling is dispositive of this appeal and requires reversal and a new trial.

### Discussion

Dr. Mishler contends that the district court prejudicially erred in admitting, over several objections, a memorandum regarding his professional reputation.[1] The court admitted the memorandum for unlimited purposes.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. NRS 51.035. Here, the apparent declarant, a supervising physician from the hospital where Dr. Mishler received his training, was not present to be questioned concerning the basis for his opinion. The statement "I wouldn't let [Dr. Mishler] treat my dog," obviously was intended to opine that Dr. Mishler was a poor surgeon. It was used to prove both that Dr. Mishler had an unacceptable professional history and that he acted incompetently in the diskectomy in question. This is inadmissible hearsay and together with the credential committee's report of the chief's recommendation and the letter itself, these statements constituted hearsay within hearsay. There is no apparent hearsay exception for this evidence; thus, it was inadmissible, NRS 51.065; NRS 51.067.

The memo was also inadmissible because of a lack of foundation as to its authenticity and identity. *See* NRS 52.015. It was an unsigned typewritten photocopy without any indication of the date of receipt by the hospital. The record custodian testified that the hospital investigated Dr. Mishler, but the record custodian did not say when in relation to these investigations the hospital received the memorandum in question. The recital of authorship on the face of this writing was insufficient proof of authenticity to secure its admission for unlimited purposes. *See* Frias v. Valle, 101 Nev. 219, 698 P.2d 875 (1985) (improper to admit thermo-

---

[1]The memorandum, on the stationery of Porter Memorial Hospital in Denver, Colorado, and dated June, 1970, was unsigned but recited that it was authored by a chairperson of the credentials committee. It provided, in pertinent part:

> This gentleman came to Pueblo and they needed a neurosurgeon badly. This man had had a misunderstanding with his chief where he was taking his training and left his residence [sic] six months or a year prior to completing his residency. The Credentials Committee there then contacted his chief to get a recommendation and his chief said, "I wouldn't let him treat my dog." So on the basis of this they couldn't get satisfactory recommendation so denied him staff privileges at St. Mary-Corwin.

gram evidence without testimony as to when taken or how identified); *see also* NRS 52.015(1); NRS 52.025. Moreover, the judgmental statements in the memo regarding Dr. Mishler's capabilities are irrelevant to the issue of Dr. Mishler's conduct during the diskectomy, *see* NRS 48.015.

The supervising physician's comment was an emotional statement of opinion as to the doctor's capabilities and character. It had a high potential for prejudicially arousing the jury's hostility against Dr. Mishler. The statement distracted the jury from the issue of the reasonableness of Dr. Mishler's conduct during the diskectomy, and interjected a strong potential, if not probability, of jury confusion based upon the highly deprecatory characterization of Dr. Mishler's professional history. Moreover, the prejudice intrinsic to the statement was exacerbated by respondent's counsel during closing argument, and the resulting level of prejudice was perpetuated and intensified by the magnified reproduction of the statement that adorned the jury room during the jurors' deliberations. Even in the absence of defense counsel's request to strike the evidence upon the dismissal of the hospital, its admission, without limiting instructions to consider it only for the purpose of showing the hospital's notice of Dr. Mishler's poor reputation, was error. Blueflame Gas, Inc. v. Van Hoose, 679 P.2d 579, 586-87 (Colo. 1984) (where critical aspect of a claim is implicated, the propriety of a court's *sua sponte* instruction will be addressed to prevent manifest injustice. Britton v. Groom, 373 P.2d 1012, 1016 (Okla. 1962); Otterbeck v. Lamb, 85 Nev. 456, 456 P.2d 855 (1969).

### *Disposition*

We conclude that the admission of the memorandum discussed above constituted prejudicial error of a magnitude that demands reversal and a new trial. Having thus concluded, it is unnecessary to consider other issues raised on appeal. Accordingly, the judgment upon the jury verdict is reversed and the case remanded for new trial.