ALAN J. MISHLER, M.D., APPELLANT, *v.* THE STATE OF NEVADA BOARD OF MEDICAL EXAMINERS, RESPONDENT.

No. 22397

March 24, 1993                                     849 P.2d 291

[Rehearing denied July 7, 1993]

*Hamilton & Lynch,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *Page Underwood,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

*Per Curiam:*

Dr. Alan J. Mishler received his medical degree in 1960 and then completed an internship and residencies in surgery and neurosurgery. In 1978, he was board-certified in neurological surgery. In late 1980, he moved to Reno, intending to associate with another neurosurgeon already practicing in the Reno area. In January, 1981, Dr. Mishler received his license to practice medicine in Nevada.

After a brief association with the neurosurgeon in Reno, Dr. Mishler, appalled at the neurosurgeon's standards of practice and his billing procedures, refused to work with him any longer. Dr. Mishler brought his concerns to the attention of the Chairman of the Department of Neurosurgery at Washoe Medical Center (WMC), the Governor of the State of Nevada, the State of Nevada Board of Medical Examiners (the Board), and an investigator for the Washoe County District Attorney's Office. Despite his colleagues' warnings to keep quiet, Dr. Mishler persisted. At a meeting to review the death of a twelve-year-old boy who, though not brain dead, was removed from a respirator, Dr.

Mishler again criticized the neurosurgeon with whom he had associated.

According to the uncontroverted evidence, Dr. Mishler's colleagues, in retaliation against him for his candor, combed the hospital records for any negative findings they could generate against him. In an unusual inquiry, WMC reviewed one hundred five of Dr. Mishler's patient hospital charts and selected approximately thirty-four of those cases as the basis to challenge Dr. Mishler's hospital privileges. Fourteen of these thirty-four cases formed the basis of the initial complaint by the Board against Dr. Mishler.

Based on this evaluation, WMC did not renew Dr. Mishler's hospital privileges. Subsequently, the local anesthesiologists refused to service his private patients, and he was forced to leave Nevada. Even though it had not yet filed any proceedings against Dr. Mishler, the Board refused to respond to inquiries from other state medical boards regarding his license status. As a result, Dr. Mishler could not obtain work elsewhere.[1] In February, 1985, Dr. Mishler's Nevada license expired due to non-renewal.

On September 17, 1986, three years after WMC's hostile scrutiny of Dr. Mishler's charts caused him to lose his hospital privileges, the Board filed its complaint against Dr. Mishler. The record reflects only one patient's complaint against Dr. Mishler, for whose treatment he was subsequently exonerated.[2] On October 6, 1986, Dr. Mishler advised the Board of his intention to defend himself at the hearing. Because he had filed bankruptcy, he requested that the Board provide financial assistance and counsel. Also, he requested that the Board provide him with various documents and all relevant X-rays.

On November 4, 1986, the Office of the Attorney General wrote Dr. Mishler and advised him that the Board would not provide him with financial assistance, counsel, or expert witnesses. It further stated that it was Dr. Mishler's responsibility to secure medical records and X-rays. On December 3, 1986, the Board advised Dr. Mishler that it would not give him the records

---

[1]Dr. Mishler brought suit against the Board under a civil rights statute for the Board's delay of seventeen months before verifying to the Ohio Board of Medical Examiners that he was a physician in good standing. The United States District Court for the District of Nevada dismissed the suit for failure to state a claim. On February 16, 1990, the Ninth Circuit Court of Appeals reversed and remanded the matter for trial. Mishler v. Nevada State Bd. of Medical Examiners, 896 F.2d 408 (9th Cir. 1990).

[2]This patient filed a civil malpractice action against Dr. Mishler and recovered a judgment in the district court. In Mishler v. McNally, 102 Nev. 625, 730 P.2d 432 (1986), this court reversed because the patient was subsequently found to have a condition that was diagnosable only with equipment that was not available at the time Dr. Mishler treated her.

of the Board's investigation of him because the records were confidential.[3] Although Dr. Mishler requested documents and materials on several occasions, the Board did not provide any materials to Dr. Mishler until shortly before the hearing began on June 5, 1989. The Board only provided Dr. Mishler with the hospital medical records, without X-rays or other radiographic studies, and told him that years earlier WMC had destroyed the X-rays and other radiographic studies under its retention policy. Thus, no X-rays or other radiographs were available at the hearing.

At the hearing, held on June 5 and 6, 1989, and July 7, 1989, the Board's sole witness was Dr. Arthur Lyons. Dr. Lyons, a San Francisco neurosurgeon, had never been licensed in Nevada and had never practiced neurosurgery in Northern Nevada. Dr. Mishler objected to Dr. Lyons' testimony on the grounds that Dr. Lyons was unqualified to testify as to the standards of the Reno medical community. The hearing officer took the objection under advisement and allowed Dr. Lyons to testify. Dr. Lyons' testimony was based solely on his review of the hospital records admitted into evidence. Dr. Lyons did not see any patient personally, did not review any X-rays or radiographs, and did not review Dr. Mishler's office records. Dr. Mishler objected to the admission of the hospital records without their accompanying X-rays and radiographs, and the hearing officer took the objection under advisement. Dr. Mishler testified in his own behalf, and two other neurosurgeons, Dr. Don Olson and Dr. John Clark, also testified in his defense.

After submission of the evidence, the hearing officer issued a written synopsis in which he overruled Dr. Mishler's objections to Dr. Lyons' testimony and to the admission of hospital records without the X-rays and other radiographs. The hearing officer recommended that five of the charges be upheld. On judicial review, the district court found that NAC 630.230(4),[4] a regulation with respect to standards of treatment, was unconstitutionally vague and reversed the Board's orders on the three cases in which discipline was based on that regulation. The district court remanded the matter to the Board for reconsideration of the

---

[3]While the Board withheld documents from Dr. Mishler on the expressed basis of its policy of confidentiality, it violated that policy when it forwarded confidential material, including the transcripts of Dr. Mishler's conversations with an investigator, to Dr. Mishler's neurosurgical colleagues.

[4]In 1985, NAC 630.230(4) provided that a physician shall not "[c]onsistently use medical procedures, services or treatments which constitute a departure from prevailing standards of acceptable medical practice even though the use does not constitute malpractice or gross malpractice as defined by law."

disciplinary decision on the two remaining cases (designated as cases five and seven), which were based on violations of NAC 630.210.[5] the regulation with respect to consultation. On remand, the Board modified Dr. Mishler's discipline from license revocation to a public reprimand and set forth restrictions with respect to his reapplication for a Nevada license. The district court dismissed a petition for judicial review, and on July 8, 1991, Dr. Mishler filed a timely appeal to this court.

The standard of review for administrative decisions is well-settled. "The standard of judicial review within . . . NRS 233B.140(5) precludes the reviewing court from substituting its judgment for that of the agency." Nev. St. Bd., Dental Exam'rs v. Toogood, 97 Nev. 255, 260, 628 P.2d 301, 305 (1981) (footnote omitted). See Board Med. Exam'rs v. Potter, 99 Nev. 162, 165, 659 P.2d 868, 870 (1983). Judicial review is confined to the record before the administrative agency. NRS 233B.135(1);[6] Apeceche v. White Pine Co., 96 Nev. 723, 725, 615 P.2d 975, 977 (1980). The court must affirm the decision of the administrative agency if that decision is supported by substantial evidence in the record. SIIS v. Swinney, 103 Nev. 17, 20, 731 P.2d 359, 361 (1987). When the factual findings of the administrative agency are supported by the evidence, they are conclusive, and the district court is limited to a determination of whether the agency acted arbitrarily or capriciously. NRS 612.530(4);[7] Employment Sec. Dep't v. Verrati, 104 Nev. 302, 304, 756 P.2d 1196, 1197 (1988). However, this court may set aside an administrative agency's decision if the agency has prejudiced substantial rights. NRS 233B.135(3).[8]

---

[5]In 1985, NAC 630.210 provided that: "A physician shall seek consultation in doubtful or difficult cases whenever it appears that consultation may enhance the quality of medical services. A physician should consent to consultation upon request of the patient or the patient's family."

[6]NRS 233B.135(1) provides as follows:
   1. Judicial review of a final decision of an agency must be:
   (a) Conducted by the court without a jury; and
   (b) Confined to the record.
In cases concerning alleged irregularities in procedure before an agency that are not shown in the record, the court may receive evidence concerning the irregularities.

[7]NRS 612.530(4) provides:
   In any judicial proceedings under this section, the finding of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.

[8]NRS 233B.135(3) provides:
   3. The court shall not substitute its judgment for that of the agency

Dr. Mishler argues that Dr. Lyons, the expert who testified for the Board, was unqualified to testify as to the medical community standards in Reno, and that a local standard should have applied to the charges against him. However, in holding that board-certified specialists should be evaluated by the national standards of their particular specialty, this court expressly overruled the "locality rule" in Orcutt v. Miller, 95 Nev. 408, 414, 595 P.2d 1191, 1195 (1979). Nevertheless, Dr. Mishler argues that *Orcutt* is confined to medical malpractice cases and does not apply to a license revocation proceeding. Our justifications in *Orcutt* for abandonment of the locality rule in medical malpractice cases included "ubiquitous national communication networks and increasing standardization of medical training." *Id.* at 413, 595 P.2d at 1194. The same reasons for abandonment of the locality rule also apply to a license revocation proceeding. Therefore, we disagree with Dr. Mishler, and conclude the hearing officer properly admitted the expert testimony of Dr. Lyons, which was based on a national standard of care.

Next, Dr. Mishler contends that it was the Board's responsibility to arrange and preserve the relevant evidence against him. Therefore, he claims that the proceedings were unfair because the Board denied him access to the evidence (X-rays and radiographs) that would prove or refute the charges against him. Because the Board prevented access to this evidence, none of the experts had an opportunity to review the X-rays. In both of the medical cases involved in this appeal, myelograms[9] or X-rays were relevant. In case five, Dr. Lyons testified that the myelogram was normal and questioned Dr. Mishler's findings to the contrary. However, Dr. Lyons never saw the myelogram and did not interview the patient, and neither Dr. Mishler nor his experts had the opportunity to examine the myelogram. In case seven, the radiologist's report on the myelogram differed from Dr. Mishler's

---

as to the weight of evidence on a question of fact. The court may remand or affirm the final decision or set it aside in whole or in part if substantial rights of the petitioner have been prejudiced because the final decision of the agency is:

    (a) In violation of constitutional or statutory provisions;
    (b) In excess of the statutory authority of the agency;
    (c) Made upon unlawful procedure;
    (d) Affected by other error of law;
    (e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
    (f) Arbitrary or capricious or characterized by abuse of discretion.

[9]A myelogram is "an X-ray of the spinal cord, taken after the injection of a substance that will show contrast on the developed photograph." Webster's New World Dictionary 897 (3d college ed. 1989).

reading of it. Dr. Lyons, who never saw the myelogram, based his expert opinion solely on the radiologist's report, even though the operative report confirmed Dr. Mishler's pre-operative diagnosis. Again, neither Dr. Mishler nor his expert witnesses had the opportunity to review the myelogram to compare Dr. Mishler's reported findings with the radiologist's report.

The hearing officer ruled that the absence of the myelograms and X-rays was Dr. Mishler's fault. We conclude that this ruling was erroneous. Dr. Mishler's routine practice was to leave the X-rays and diagnostic films at WMC. When WMC initiated the hostile chart review against Dr. Mishler, he tried to, but could not, obtain the myelograms and X-rays. When the Board initiated these proceedings in 1986, the diagnostic films relating to the 1981 cases would have been destroyed under WMC's five-year retention policy, unless the Board had previously obtained them. The records were privileged and were accessible only to the patients, the patients' physicians, and the Board. *See* NRS 629.061(1).[10] In 1986, Dr. Mishler was not the physician for any of the patients, and he was no longer licensed to practice in Nevada because his license was not renewed in 1985. Dr. Mishler repeatedly requested the diagnostic films, but the Board told him that any materials that it had were protected from disclosure by a policy of confidentiality. The record does not state whether the Board had the records in its possession or whether the records were destroyed. In either case, the Board controlled, or once had controlled, access to the records. Thus, we conclude that the Board obstructed Dr. Mishler's access to the records.

In three recent civil actions, this court has noted the obligation of a party who intends to rely on certain evidence to marshal and preserve it for the benefit of the opposing party. Where a party fails to do so, that party must suffer the prejudice from the absence of the evidence. *See* Stubli v. Big D International Trucks, 107 Nev. 309, 810 P.2d 785 (1991); Judson v. Camelot Food, Inc., 104 Nev. 324, 756 P.2d 1198 (1988); Fire Ins. Exchange v. Zenith Radio Corp., 103 Nev. 648, 747 P.2d 911 (1987). *Stubli* set forth a non-exhaustive list of factors which a court may consider when deciding whether dismissal of the complaint is appropriate. These factors are as follows:

---

[10]NRS 629.061(1) provides in part:

    1. Each provider of health care shall make the health care records of a patient available for physical inspection by:

    (a) The patient or a representative with written authorization from the patient;

    (b) An investigator for the attorney general or a grand jury investigating an alleged violation of NRS 422.540 to 422.570, inclusive; or

    (c) Any authorized representative or investigator of a state licensing board during the course of any investigation authorized by law.

(1) the degree of willfulness of the offending party; (2) the extent to which the non-offending party would be prejudiced by a lesser sanction; (3) the severity of the sanction of dismissal relative to the severity of the discovery abuse; (4) whether any evidence has been irreparably lost; (5) the policy favoring adjudication on the merits; (6) whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney; and (7) the need to deter both the parties and future litigants from similar abuses.

107 Nev. at 313, 810 P.2d at 787.

Under most of these factors, we conclude that the Board's actions warrant dismissal of the charges against Dr. Mishler. First, the Board's timing is suspect because it initiated proceedings against Dr. Mishler five years after he treated the patients in question, when the Board knew that WMC had a five-year retention policy, and the evidence had already been destroyed or soon would be destroyed. Although the Board knew that Dr. Mishler had declared bankruptcy and could not afford counsel, it attempted to shift the burden of obtaining evidence to Dr. Mishler when he was no longer privileged to obtain the material and lacked the funds necessary to challenge the Board's decision. Thus, the degree of willfulness of the offending party, namely, the Board, is high. Second, Dr. Mishler, the non-offending party, would be prejudiced by a lesser sanction because he would still have a public reprimand on his record and would still encounter impediments when reapplying for a license in Nevada. Third, the Board's failure to retain the records relevant to the license revocation proceedings against Dr. Mishler demonstrates a significant degree of discovery abuse, and consequently, a severe sanction of dismissal of the Board's charges is appropriate. Fourth, the records have been irreparably lost. Fifth, the merits of the allegations against Dr. Mishler were inadequately addressed because neither he nor any of the witnesses had the opportunity to view the X-rays and diagnostic films. Sixth, the sanction of dismissal furthers the policy of deterring the Board from similar abuses in future disciplinary actions and license revocation proceedings. We therefore conclude that the Board had the duty to marshal and preserve the evidence, and that sanctions against it are appropriate because of its failure in that regard.

Furthermore, due to the absence of important records, the evidence does not support the findings with respect to cases five and seven. In both cases, the expert witness for the Board testified only with regard to the hospital records, and he never saw Dr. Mishler's office records, the X-rays, or the myelograms. In both cases, Dr. Mishler sought consultation with other physicians before surgery, and the evidence did not reveal that any

further consultation was necessary. Dr. Mishler's surgeries were successful, the symptoms vanished, and neither patient had any complaint against Dr. Mishler about the outcome. Moreover, two neurosurgeons testified that the surgeries were within the standard of care. While this court gives great deference to administrative findings that are supported by the evidence, it need not give deference to erroneous findings. NRS 233B.135(3)(e); Board Med. Exam'rs v. Potter, 99 Nev. 162, 659 P.2d 868 (1983). We conclude that the evidence against Dr. Mishler was insufficient to show a violation of NAC 630.210.

Moreover, the underlying nature of the proceedings against Dr. Mishler deserves inspection. With respect to a disciplinary proceeding against a licensed professional, this court has an "obligation . . . to look beyond the label given to a conviction to the true nature of the facts, in order to determine whether the underlying circumstances of the conviction warrant discipline." State Bar of Nevada v. Claiborne, 104 Nev. 115, 211, 756 P.2d 464, 526 (1988). The sole purpose of the power to revoke a physician's license is to protect the public. Boswell v. Bd. Med. Ex., 72 Nev. 20, 293 P.2d 424 (1956). "Acts of the legislature . . . conferring jurisdiction on medical boards to revoke a physician's license, find their justification in the police power of the state to protect the public health, safety or morals." Id. at 24, 293 P.2d at 427. Boswell held that a doctor's harsh criticism of other doctors did not warrant revocation of his license. Id.

When we look beyond the label of the discipline given to Dr. Mishler to the true nature of the facts, we conclude that the discipline was unwarranted. The Board's power was not exercised for the proper and commendable purpose of protecting the public from incompetent and negligent physicians. Instead, the Board wielded its power to ruin the career of an outspoken physician while simultaneously protecting a possibly negligent or incompetent practitioner who had questionable billing procedures. Although only one patient had complained about Dr. Mishler, and that complaint was subsequently found to be unjustified, the Board purposely scrutinized Dr. Mishler's charts to find evidence with which to discipline Dr. Mishler. The Board timed its proceedings against Dr. Mishler to limit the evidence available to him for his defense, because WMC's retention policy operated to destroy important films. Also, while the Board used its own rules of confidentiality as an excuse to obstruct Dr. Mishler's access to evidence, it violated the same policy with respect to Dr. Mishler's confidential reports. The Board knew that Dr. Mishler

was so impoverished that he had declared bankruptcy, and that he could ill afford to hire counsel. Finally, even though the Board had the right to obtain the records and Dr. Mishler did not, the Board attempted to shift the burden for the preservation of evidence to Dr. Mishler. Despite the absence of this evidence—office records, X-rays, and diagnostic films—at the hearing, the Board disciplined Dr. Mishler.

In short, we conclude that the Board's actions and the proceedings against Dr. Mishler constituted a disturbing abuse of its power. Therefore, we reverse the disciplinary order of the Board in its entirety and dismiss all proceedings against Dr. Mishler with prejudice. Because we reverse on the grounds of insufficient evidence, we do not reach the issue of the constitutionality of NAC 630.210(2).[11]

ROSE, C. J., STEFFEN, YOUNG and SPRINGER, JJ., ZENOFF, SR. J.[12]

---

[11]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this appeal.

[12]THE HONORABLE CHARLES E. SPRINGER, Justice, appointed THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in place of THE HONORABLE JOHN C. MOWBRAY, Justice.