NEVADA STATE BOARD OF NURSING, APPELLANT, *v.* TIMOTHY MERKLEY, RESPONDENT.

No. 27620

June 4, 1997                                            940 P.2d 144

*Frankie Sue Del Papa,* Attorney General, and *Keith D. Marcher,* Deputy Attorney General, Carson City, for Appellant.

*Peter D. Durney,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Respondent Timothy Merkley ("Merkley") is a registered nurse licensed by appellant, the Nevada State Board of Nursing (the "Board"), and formerly employed at Saint Mary's Regional Hospital. On April 17, 1993, Merkley provided nursing care for a terminally ill patient, Mr. Bayless. Merkley was subsequently charged with unprofessional conduct in connection with this treatment, and the Board suspended his nursing license for one year. The Board's order was reversed by the district court. The Board now appeals the decision of the district court.

We conclude that the district court erred in finding that the Board's decision was arbitrary and capricious and unsupported by substantial evidence. We further conclude that several of the Board's factual findings were in error. We therefore reverse the district court's order and remand this matter to the district court with instructions to remand to the Board so that it can determine appropriate discipline in light of this opinion.

### STATEMENT OF THE FACTS

On April 17, 1993, Wendy Smedes ("Smedes"), a registered nurse, was on the 2:15 p.m.-10:45 p.m. shift at Saint Mary's Regional Hospital ("St. Mary's") and was responsible for patient Leon Bayless ("Mr. Bayless"). Mr. Bayless had peripheral vascular disease, was in terminal condition, and had chosen a "do not resuscitate" policy. He was ischemic below his waist. Smedes and the nursing staff had been instructed to make Mr. Bayless as comfortable as possible. Mr. Bayless' son, Dr. Joseph Bayless ("Dr. Bayless"), an anesthesiologist at the hospital, was

present in the room during these hours, as was Mr. Bayless' wife ("Mrs. Bayless"), and Dr. Bayless' wife, both of whom were nurses.

At 5:00 p.m. Smedes administered Percocet, a pain medication, to Mr. Bayless. However, it became apparent to Smedes and to Mr. Bayless' family that the Percocet was not relieving his pain. According to Dr. Bayless, his father was trying to tear out his abdomen and genitals, and both his father and mother begged Dr. Bayless to take the pain away.

Smedes telephoned the office of Dr. Schultz, the doctor in charge of Mr. Bayless' case, and reached Dr. Shapiro, who was on call that afternoon. Dr. Shapiro gave Smedes an order for Morphine to be administered by intravenous drip ("IV") at ten milligrams per hour, with a three-milligram loading dose. According to Dr. Bayless, Dr. Shapiro asked him if the dosage was adequate, and it was understood that this order was a "starting point" and that the dosage was less important than Mr. Bayless' comfort.

Merkley, a registered nurse licensed by the Board, was the clinical leader responsible for helping other nurses that afternoon. While Smedes was occupied with other patients, Merkley picked up a solution containing 125 milligrams of Morphine from the pharmacy. Dr. Bayless testified that he hung the bag at approximately 6:20 p.m. and "let it run wide open" until his father said that he felt better. About a half hour later, Smedes verified that it was hung properly. She checked on the patient again at approximately 9:30 p.m., at which time Mr. Bayless' respiratory rate appeared normal and the IV appeared to be flowing at the expected rate. The IV was timed to run over twelve hours.

At 11:30 p.m. Merkley went into Mr. Bayless' room in response to an alarm and found the Morphine bag empty. Dr. Bayless, noting that his father was showing signs of discomfort, told Merkley to obtain a second bag. On his way to the pharmacy, Merkley sought his supervisor, Aletha Hartwig ("Hartwig"), and apprised her of his concern about the increased IV rate. Hartwig told him to fill out a "variance report."

Dr. Bayless offered to write an order for the second bag of Morphine, but Merkley refused to accept an order from a family member. Therefore, Dr. Bayless telephoned another anesthesiologist, Dr. Calvin Smith ("Dr. Smith"), who was on call within the hospital. Dr. Smith ordered Merkley to resume Dr. Shapiro's order. This telephone order was made at approximately 12:00 a.m., but Merkley back-timed it to appear as if it were made at 9:00 p.m. Mr. Bayless received approximately 100 milligrams of Morphine from the second bag before he was declared dead on

April 18th at 1:00 a.m. Mr. Bayless' death certificate lists his cause of death as cardiorespiratory failure due to gangrene of the left lower extremity due to severe arteriosclerosis.

Merkley and a second nurse completed a variance report on April 17. On April 23, Merkley asked Linda Charlebois ("Charlebois"), the manager of his nursing unit, if she had any questions about it. Subsequently, the hospital commenced an investigation against Merkley and the other nurse, as a result of which both nurses were fired. The hospital notified the Board of the investigation, and the Board filed an administrative complaint against Merkley charging him with gross negligence and unprofessional conduct pursuant to NRS 632.320 and NAC 632.890.

NRS 632.320 provides, in relevant part:

> The board may deny, revoke or suspend any license or certificate applied for or issued pursuant to this chapter, or take other disciplinary action against a licensee or holder of a certificate, upon determining that he:
>
> . . . .
>
> 4. Is unfit or incompetent by reason of gross negligence or recklessness in carrying out the usual nursing functions.
>
> . . . .
>
> 7. Is guilty of unprofessional conduct . . . .

The Board concluded that Merkley committed four acts constituting unprofessional conduct pursuant to NRS 632.320 and NAC 632.890: (1) inaccurate recording, falsifying or otherwise altering or destroying records; (2) failing to collaborate with other members of a health care team as necessary to meet the health needs of a patient; (3) failing to observe the conditions, signs and symptoms of a patient, to record the information or to report significant changes to the appropriate persons; and (4) failing to perform nursing functions in a manner consistent with established or customary standards. Accordingly, the Board suspended Merkley's license to practice nursing for one year, then stayed the suspension, placing Merkley on probation for one year.

Merkley petitioned the district court for judicial review, which was granted by an order dated August 22, 1995. The district court determined that the Board's decision was arbitrary and capricious and unsupported by substantial evidence. The court noted that Charlebois had failed to interview Drs. Smith and Bayless, and had determined without any basis in fact that Mr. Bayless received an inappropriate amount of morphine and substandard care. The district court further noted that Charlebois and Saint Mary's had delayed acting upon the variance report and had failed to notify the coroner's office that Mr. Bayless' death involved unusual circumstances until after his body had been

cremated. The court noted that the Board imposed a standard of care that is not established, stating, "There is no indication in the record of any guidelines establishing a set of circumstances under which a nurse is required to question or challenge a physician's decision or to determine which physician has the authority to treat a particular patient." Finally, the district court noted that there was ample evidence that Mrs. Bayless wanted Dr. Bayless to treat her husband.

The Board timely appeals the order of the district court.

## DISCUSSION

The Board argues that substantial evidence supports its decision to discipline Merkley; therefore, the district court committed reversible error by failing to affirm the Board's decision. The Board contends that the district court improperly ignored factual findings and substituted its judgment for that of the Board.

This court's role in reviewing an administrative decision is identical to that of the district court. Ruggles v. Public Service Comm'n, 109 Nev. 36, 40, 846 P.2d 299, 301 (1993) (citation omitted). This court must affirm a decision by the agency that is supported by substantial evidence. Mishler v. State, Bd. of Med. Examiners, 109 Nev. 287, 292, 849 P.2d 291, 294 (1993). "When the factual findings of the administrative agency are supported by the evidence, they are conclusive, and the district court is limited to a determination of whether the agency acted arbitrarily or capriciously." Id. at 292, 849 P.2d at 294 (citation omitted); see NRS 233B.135(3). However, this court may set aside the agency's decision if the agency has prejudiced substantial rights. Mishler, 109 Nev. at 292, 849 P.2d at 294.

NAC 632.890 put Merkley on notice of the acts that constitute professional misconduct, and the Board found that he committed four of these acts. First, the Board found that he falsified a record by back-timing the second order for Morphine. This finding is supported by the record.

Second, the Board found that Merkley failed to collaborate with other members of a health care team as necessary to meet the health needs of a patient. The Board sanctioned Merkley for failing to obtain an order for the second bag of Morphine from Dr. Shapiro, the physician of record. Charlebois, and Kathy Ruebusch ("Ruebusch"), a clinical nurse, both testified that they would never take an order from a member of a patient's family.

However, Merkley did not accept the order for the second bag of Morphine from Dr. Bayless, but accepted it from Dr. Smith. Moreover, Dr. Bayless testified that no Nevada policy prevented him from treating his own family or from giving the order. He testified that he was in the best position to attend to his father's needs because he was at his father's bedside the entire day, and was an anesthesiologist with responsibilities on that floor of the hospital. He explained that Dr. Shapiro was deferring to his judgment, that he was hired by his mother and father to provide medical care, and that the only reason he was not considered a member of the medical team was that Merkley did not allow him to write on Mr. Bayless' chart.

Also, Dr. Bayless testified that Dr. Smith's anesthesiology team provided anesthesia when Mr. Bayless' leg was amputated, and therefore was part of Mr. Bayless' medical group. Dr. Bayless explained that it was not out of the ordinary to call Dr. Smith for the order, and that contacting Dr. Shapiro on a Saturday night would have been a "nuisance call." Dr. Smith testified that the second order was proper. Both doctors testified that it was appropriate for Mr. Bayless to receive tremendous quantities of Morphine, and that he had an extraordinarily high tolerance for the drug. Thus, the evidence shows that Mr. Bayless' health needs were met, and that Merkley acted in an appropriate manner.

Third, the Board found that Merkley failed to observe, record and report Mr. Bayless' condition. In the Board's deliberations, Board members stated that flicking Mr. Bayless' toe, when he had a necrotic foot, did not constitute an adequate assessment of Mr. Bayless' condition. The Board also criticized Merkley's failure to notify Dr. Shapiro of the increased dosage of Morphine.

Merkley testified that because he was ordered to provide only comfort care, further assessment was unwarranted. Both he and Smedes checked Mr. Bayless' respirations, which did not indicate a drug overdose. The other nurse subject to discipline testified that Mr. Bayless' respiration was normal and further assessment was not needed. Moreover, Dr. Bayless was monitoring Mr. Bayless during the entire period in question and indicated that he did not want his father to be disturbed by a full assessment when he had finally been made comfortable. We conclude that the Board's finding that Merkley failed to observe, record and report Mr. Bayless' condition is not supported by substantial evidence in the record.

Fourth, the Board sanctioned Merkley for failing to follow

customary standards. Charlebois and Ruebusch testified that it was standard practice to call the attending physician in such circumstances and to refuse orders from members of a patient's family. However, the hospital's policy regarding treatment of family members was not put in writing until *after* the incident with Mr. Bayless.

Charlebois, who commenced the investigation against Merkley, believed that Mr. Bayless' death was under suspicious circumstances. She testified, "[T]here is a line between providing comfort and deliberately administering or allowing to be administered what we all know as nurses is a fatal dose of Morphine." She testified that Merkley should have administered Narcan to reverse the effects of the Morphine. However, two qualified anesthesiologists strongly disagreed with this assessment. Dr. Bayless was severely critical of the use of Narcan, stating that it would have caused his father to be wide awake and in excruciating pain. Dr. Smith testified that a strong argument could be made that the increased dosage was life-prolonging. Moreover, Dr. Bayless' family commended Merkley's actions. Mrs. Bayless, formerly the Secretary of the Board, was shocked when Merkley was reprimanded.

The Board has wide discretion to discipline and ensure the competence of its licensees. Nonetheless, as this court noted in *Mishler*, "With respect to a disciplinary proceeding against a licensed professional, this court has an 'obligation . . . to look beyond the label given to a conviction to the true nature of the facts, in order to determine whether the underlying circumstances of the conviction warrant discipline.' " 109 Nev. at 296, 849 P.2d at 296 (citing State Bar of Nevada v. Claiborne, 104 Nev. 115, 211, 756 P.2d 464, 526 (1988)). Here, the record does not support the Board's findings that Merkley failed to collaborate with other members of a health care team as necessary to meet the health needs of a patient, that Merkley failed to observe, record and report Mr. Bayless' condition, or that Merkley's conduct fell below the standards of practice for nurses in Nevada. The record indicates that Merkley acted to ensure that Mr. Bayless' health needs were met and that Mr. Bayless received a standard of care consistent with his and his family's wishes.[1] In

---

[1] *See* Comment, *The Nurse as Patient Advocate: Is There a Conflict of Interest?*, 29 Santa Clara L. Rev. 391, 394 (1989) (discussing how the lack of usable guidelines which would enable nurses to resolve conflicts between their ethical duties to patients and legal duties to employers and physicians creates confusion over what behavior is sanctionable); *see also* Elizabeth Harrison Hadley, *Nurses and Prescriptive Authority: A Legal and Economic Analysis*, 15 Am. J. L. & Med. 245 (1989) (criticizing state statutes defining

view of the circumstances of this case, we conclude that the Board prejudiced Merkley's substantial rights by suspending his license to practice nursing.

## CONCLUSION

We conclude that the Board did not abuse its discretion in determining that Merkley violated NRS 632.320 and NAC 632.890 by back-timing an order for Morphine. We therefore reverse the order of the district court, which reversed the decision of the Board. We further conclude that the Board's findings that Merkley failed to collaborate with other members of a health care team as necessary to meet the health needs of a patient, that Merkley failed to observe, record and report Mr. Bayless' condition, and that Merkley's conduct fell below the standards of practice for nurses in Nevada, are not supported by substantial evidence in the record. We therefore remand this matter to the district court with instructions to remand to the Board so that the Board can determine appropriate discipline in light of this opinion.

---

the practice of nursing that fail to recognize that nurses routinely perform tasks requiring independent judgment, therefore putting nurses unfairly at risk of sanctions).